| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Lisa Greer Quateman (SBN 84582)<br>Kathryn Kerfes Amira (SBN 101806)<br>Quateman LLP<br>1801 Century Park East, Suite 1801<br>Los Angeles, California 90067<br>Telephone (310) 556-1801<br>Facsimile (310) 556-1802<br><br>☐ *Individual appearing without counsel*<br>☒ *Attorney for:* Federal Deposit Insurance Corporation, as Receiver | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA

| In re:<br><br>Temecula Valley Bancorp, Inc.,<br><br><br><br>Debtor(s). | CHAPTER: 7 |
|---|---|
| | CASE NO.: 6:09-bk-36828-DS |
| | DATE: Not Yet Set<br>TIME: Not Yet Set<br>CTRM: 304<br>FLOOR: 3rd |

## NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## UNDER 11 U.S.C. § 362 (with supporting declarations)
### (MOVANT: <u>Federal Deposit Insurance Corporation, as Receiver</u>   )
### (Action in Non-bankruptcy Forum)

1. NOTICE IS HEREBY GIVEN to the Debtor(s) and Trustee (if any)("Responding parties"), their attorneys (if any), and other interested parties that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate on the grounds set forth in the attached Motion.

2. **Hearing Location:**   ☐ **255 East Temple Street, Los Angeles**      ☐ **411 West Fourth Street, Santa Ana**

   ☐ **21041 Burbank Boulevard, Woodland Hills**   ☐ **1415 State Street, Santa Barbara**

   ☒ **3420 Twelfth Street, Riverside**

3. a. ☐ This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and must appear at the hearing of this Motion.

   b. ☒ This Motion is being heard on SHORTENED TIME. If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence must be filed and served:

   ☐ at the hearing      ☐ at least _____ court days before the hearing.

   (1) ☐ A Motion for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

   (2) ☐ A Motion for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court.

   (3) ☒ A Motion for Order Shortening Time has been filed and remains pending. Once the Court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time, and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion.

4. You may contact the Bankruptcy Clerk's Office to obtain a copy of an approved court form for use in preparing your response *(Optional Court Form F 4001-1.RES)*, or you may prepare your response using the format required by Local Bankruptcy Rule 9004-1 and the Court Manual.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

December 2009

**F 4001-1M.NA**
F4001MNA

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 2 of* ____    **F 4001-1M.NA**

| In re | | CHAPTER: 7 |
|---|---|---|
| | (SHORT TITLE) | |
| Temecula Valley Bancorp, Inc., | Debtor(s). | CASE NO.: 6:09-bk-36828-DS |

5.    If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

Dated: August 17, 2010

Quateman, LLP
_____
*Print Law Firm Name (if applicable)*

Kathryn Kerfes Amira (SBN 101806)
_____
*Print Name of Individual Movant or Attorney for Movant*

/s/ Kathryn Kerfes Amira
_____
*Signature of Individual Movant or Attorney for Movant*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*    **F 4001-1M.NA**

| In re                              | (SHORT TITLE)                    | CHAPTER: 7                         |
|------------------------------------|----------------------------------|------------------------------------|
| Temecula Valley Bancorp, Inc.,     |                   Debtor(s).     | CASE NO.: 6:09-bk-36828-DS         |

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### (MOVANT: Federal Deposit Insurance Corporation, as Receiver          )

1. **The Non-bankruptcy Action:** Movant moves for relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate with respect to the following pending lawsuit or administrative proceeding (the "Non-bankruptcy Action") in a non-bankruptcy forum:

    Case name: No action pending
    Docket number:
    Court or agency where pending:

2. **Case History:**
    a. [X] A voluntary  [ ] An involuntary  petition under Chapter [X] 7 [ ] 11 [ ] 12 [ ] 13
       was filed on *(specify date):* November 6, 2009
    b. [ ] An Order of Conversion to Chapter [ ] 7 [ ] 11 [ ] 12 [ ] 13
       was entered on *(specify date):*
    c. [ ] Plan was confirmed on *(specify date):*
    d. [ ] Other bankruptcy cases affecting this action have been pending within the past two years. See attached Declarations.
    e. For additional case history, see attached continuation page.

3. **Grounds for Relief from Stay:** Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay to proceed with the Non-bankruptcy Action to final judgment in the non-bankruptcy forum for the following reasons:
    a. [ ] The bankruptcy case was filed in bad faith specifically to delay, hinder or interfere with prosecution of the Non-bankruptcy Action.
    b. [ ] The claim is insured. Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor(s) or estate property.
    c. [ ] Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor(s) or estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.
    d. [ ] Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor(s) or estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.
    e. [ ] The claims are non-dischargeable in nature and can be most expeditiously resolved in the non-bankruptcy forum.
    f. [ ] The claims at issue arise under non-bankruptcy law and can be most expeditiously resolved in the non-bankruptcy forum.
    g. [X] Other reasons to allow the Non-bankruptcy Action to proceed are set forth in an attached Declaration.

4. [ ] Movant also seeks annulment of the stay so that filing of the bankruptcy petition does not affect any and all of the enforcement actions that were taken after the filing of the bankruptcy petition in this case, as specified in the attached Declaration(s).

5. **Evidence in Support of Motion:** *(Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)*
    a. [X] Movant submits the attached Declaration(s) to provide evidence in support of this Motion pursuant to Local Bankruptcy Rules.
    b. [ ] Movant requests that the Court consider as admissions the statements made by Debtor(s) under penalty of perjury concerning Movant's claims set forth in Debtor's(s') Schedules. Authenticated copies of the relevant portions of the Schedules are attached as Exhibit _____ .

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                                    **F 4001-1M.NA**

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 4 of* ____     **F 4001-1M.NA**

| In re                            (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| Temecula Valley Bancorp, Inc.,                                    Debtor(s). | CASE NO.: 6:09-bk-36828-DS |

   c. ☐ Other evidence *(specify)*:

6. ☒ **An optional Memorandum of Points and Authorities is attached to this Motion.**

**WHEREFORE, Movant prays that this Court issue an Order granting the following:**

1. Relief from the stay to Movant (and its successors and assigns, if any) *(check boxes re all applicable relief requested)*:

   a. ☒ Terminating the stay as to Debtor(s) and Debtor's(s') bankruptcy estate.

   b. ☐ Annulling the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

   c. ☒ Modifying or conditioning the stay as set forth in the attached continuation page:

2. Allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to proceed to final judgment in the non-bankruptcy forum, provided that the stay remains in effect with respect to enforcement of any judgment against Debtor(s) or estate property.

3. ☒ Additional provisions requested:

   a. ☐ That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

   b. ☒ That the 14-day stay prescribed by Bankruptcy Rule 4001(a)(3) be waived.

   c. ☐ That the Extraordinary Relief be granted as set forth in the Attachment *(attach Optional Court Form F 4001-1M.ER)*.

   d. ☒ For other relief requested, see attached continuation page.

4. If relief from stay is not granted, Movant respectfully requests the Court to order adequate protection.

Dated: August 17, 2010

Respectfully submitted,

Federal Deposit Insurance Corporation, as Receiver
*Movant Name*

Quateman, LLP
*Firm Name of Attorney for Movant (if applicable)*

By: /s/ *Kathryn Kerfes Amira*
   *Signature*

Name: Kathryn Kerfes Amira (SBN 101806)
   *Typed Name of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                                 **F 4001-1M.NA**

Motion for Relief from Stay (Non-Bankruptcy Action)

**In Re Temecula Valley Bancorp, Inc., U.S.B.C. Case No. 6:09-bk-36828-DS**

**<u>Continuation – Page 4</u>**

The Federal Deposit Insurance Corporation, as Receiver ("**FDIC-R**") of Temecula Valley Bank ("**Bank**"), hereby moves for the entry of an order either (1) confirming that the automatic stay does not apply to the exercise of certain Tax Rights (as defined in the attached Memorandum of Points and Authorities), or alternatively, (2) granting relief from the automatic stay to facilitate the exercise of those rights.

Motion for Relief from Stay (Non-Bankruptcy Action)

In Re Temecula Valley Bancorp, Inc., U.S.B.C. Case No. 6:09-bk-36828-DS

**MEMORANDUM OF POINTS AND AUTHORITIES**

The Federal Deposit Insurance Corporation, as Receiver ("**FDIC-R**") of Temecula Valley Bank ("**Bank**"), hereby moves on an expedited basis for the entry of an order either (1) confirming that the automatic stay does not apply to the exercise of certain Tax Rights (as defined below), or alternatively, (2) granting relief from the automatic stay to facilitate the exercise of those rights ("**Motion**"). The FDIC-R makes this Motion on an expedited basis because, if this Court does not enter the requested Order by September 15, 2010, the FDIC-R could irrevocably lose the right to claim anticipated federal income tax refunds ("**Tax Refunds**"), which will irreparably damage the depositors and creditors of the receivership, and potentially the creditors of the estate of the debtor, Temecula Valley Bancorp Inc. ("**Debtor**" or "**Bancorp**"), the Bank's holding company. By filing this Motion, the FDIC-R does not seek a determination of ownership, but merely seeks to preserve its right to claim this refund.

In support of the Motion, the FDIC-R respectfully submits as follows:

**PRELIMINARY STATEMENT**

1.    Under Section 6402(k) of Title 26 of the United States Code (the "Internal Revenue Code" or "IRC") and 26 C.F.R. § 301.6402-7 ("Treas. Reg. § 301.6402-7"), the FDIC-R, as a fiduciary of the Bank, is entitled to:

    a)    file a claim for a refund and/or a loss return for the 2009 tax year,

    b)    file any amendments to prior years' returns as may be permitted under the law, and

    c)    take such other actions as may be necessary to protect and preserve the claims of the receivership estate to tax refunds

1   (collectively, the "**Tax Rights**").[1]  This provision permits the FDIC-R to file a tax return

2   separate from a parent holding company and assert its own basis for a tax refund.

3         2.      The FDIC-R believes that the Bankruptcy Code's automatic stay does not apply

4   to the exercise of the Tax Rights and thus seeks confirmation from this Court. However, in an

5   abundance of caution, to the extent the automatic stay may be deemed to apply, the FDIC-R

6   alternatively seeks stay relief to exercise the Tax Rights, and to file all necessary documents

7   with the Internal Revenue Service ("**IRS**") to preserve the rights of the Bank to recover the

8   income tax refunds.

9         3.      The FDIC-R believes that if it does not file a tax return electing to carryback

10  certain net operating losses ("**NOLs**") of the Bank by September 15, 2010, the right to use these

11  NOLs will be forever lost. The filing of a tax return by the FDIC-R, in accordance with § 6402

12  of the IRC and applicable regulations, would give the FDIC-R the opportunity to provide the

13  IRS with the basis for tax treatment that the FDIC-R believes is appropriate and fair in these

14  circumstances.

15        4.      The FDIC-R worked diligently with Helen R. Frazer, Chapter 7 Trustee for the

16  Debtor ("**Trustee**") to reach a Stipulation for the Establishment of a Reserve Account

17  ("**Stipulation**") into which all Tax Refunds will be placed ("**Escrow Account**").    The

18  Stipulation was approved by this Court's order entered on April 23, 2010 and provides that the

19  Trustee will file a consolidated tax return for the Debtor and the Bank.  However, despite

20  repeated requests by the FDIC-R, the Trustee's professionals have not confirmed that the tax

21  return will include the NOL carryback election, leaving the FDIC-R no choice but to file this

22  Motion in order to protect the FDIC-R from forever losing the benefit of the NOLs. The FDIC-

23  R and the Trustee have each agreed to deposit Tax Refunds received for the consolidated tax

24  group consisting of Bancorp and the Bank in the Escrow Account which the Trustee has

25

26

27

28  [1] The FDIC-R previously filed a Form 56-F, to identify itself as the "fiduciary" of the failed bank prior to the filing of the
    Debtor's bankruptcy case.  A copy of the Form 56-F was provided to the Trustee and merely places the IRS on notice that
    the FDIC-R is now acting for the failed institution. *See* Treas. Reg. § 301.6402-7(d).

**MEMORANDUM OF POINTS AND AUTHORITIES**

established pending a resolution of conflicts over the ownership of such refunds.    A copy of the Stipulation is attached as Exhibit 1 to the Declaration of Dennis J. Early filed herewith.

5.    The FDIC is charged with the preservation and collection of all assets of a failed depository institution for the benefit of depositors and taxpayers.  To fulfill this obligation, the FDIC must preserve its rights to any tax refunds that may be owing to failed depository institutions.  The FDIC-R sent the Trustee the Proforma 2009 Form 1120 U.S. Corporation Income Tax Return for the Bank on May 17, 2010.  The Trustee's counsel pressed the FDIC-R at the time to provide the Bank's return, recognizing that it was "crunch time" to prepare the consolidated return.  Nonetheless, the Trustee failed to provide the FDIC-R with the completed tax return for review.

6.    The Stipulation provides that the Trustee must obtain the FDIC-R's consent to the draft consolidated tax return and that the FDIC-R would have ten business days to review the return.  The FDIC-R advised the Trustee regarding NOL elections, but the Trustee has failed and refused to communicate her intention with respect to the elections she will make, if any, in the tax return. As such, the FDIC-R is reasonably concerned that the tax return prepared by the Trustee will not properly protect the rights of the FDIC-R.  During the time that the Stipulation was negotiated, the Trustee and the FDIC-R communicated frequently and ten business days seemed an adequate amount of time for the FDIC-R's review of the tax return.  The FDIC-R is unaware of any reason why the Trustee has withheld the tax return and, thus, believes that the intent in  doing so may be to thwart its efforts to seek relief from this Court should the Trustee not include NOL carryback elections in the draft return.  If the FDIC-R does not receive the return until August 23, 2010, the date the Trustee now states it will be provided, the FDIC-R will be unduly prejudiced if the return fails to provide the greatest possible Tax Refunds available.  By the granting of the Motion, the FDIC-R will be able to file a separate return for the Bank to preserve the tax credits if it is necessary to do so.  Because the Trustee's tax return may contain positions detrimental to the receivership, the FDIC-R had no choice but to file this Motion so that it can protect the receivership's interests.

**MEMORANDUM OF POINTS AND AUTHORITIES**

7.    By filing this Motion, the FDIC-R is not seeking to recover a claim or exercise any rights against the Trustee or the Debtor, but merely seeks to preserve the status quo. A determination that the FDIC-R has the right to file its own tax return would not affect the ultimate ownership of any refunds. As Treas. Reg. § 301.6402-7(j) expressly provides, the IRS' choice between competing tax returns would not determine ownership of a resulting refund. Although the FDIC-R believes that the Tax Refunds rightfully belong to the Bank, and thus now to the receivership, the issue of ownership may wait until another day. However, if this Motion is not granted, the FDIC-R will be prevented from making its best case for the maximum refund available. In the event that any Tax Refunds are remitted to the FDIC-R, the FDIC-R agrees to place the monies into escrow pending a judicial determination of ownership.

8.    In sum, this Court should enter an order confirming that the automatic stay does not apply to the FDIC-R's exercise of certain Tax Rights, or, in the alternative, enter an order lifting the automatic stay for the sole purpose of permitting the FDIC-R to exercise its rights under § 6402 (k) of the IRC and Treas. Reg. § 301.6402-7 as a fiduciary for the Bank.

## BACKGROUND

### Appointment of the FDIC as Receiver

9.    On July 17, 2009 (the "**Bank Closing Date**"), the California Department of Financial Institutions closed the Bank and appointed the FDIC as the Receiver of the Bank. Immediately after the FDIC was appointed as the Receiver, the FDIC-R entered into a Purchase and Assumption Agreement (the "**Agreement**") with First Citizens Bank and Trust Company, Raleigh, NC for the purchase of the Bank. The FDIC-R retained certain interests and assets under the Agreement, including the rights to any and all tax refunds to which the Bank would be entitled.

10.    Prior to the Bank Closing Date, the Debtor was the holding company of the Bank incorporated in the State of California.

11.    The FDIC is a corporation organized and existing pursuant to the Federal Deposit Insurance Act, 12 U.S.C. § 1811, *et seq.*, with its principal place of business located in

---

4

Washington, D.C.  The FDIC is an independent agency created by Congress that maintains the stability and public confidence in the nation's financial system by insuring deposits, examining and supervising financial institutions, and managing receiverships.

12.    Pursuant to 12 U.S.C. § 1821(d), the rights of the FDIC, as Receiver, include the following:

> (2)    General powers
>
> > (A)    Successor to institution
> >
> > The [FDIC] shall, as conservator or receiver, and by operation of law, succeed to—
> >
> > > (i)    all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution….

12 U.S.C. § 1821(d)(2)(A)(i). Further, pursuant to 12 U.S.C. § 1821(g)(1), and notwithstanding any other provision of federal law, the FDIC, in its corporate capacity, is subrogated to all rights of any payment to any depositors upon either payment to depositors or the making of provisions for payment to the depositors of the Bank. *See* 12 U.S.C. § 1821(g)(1). The FDIC acts to protect insured depositors and creditors of the Bank.

13.    In the wake of the savings and loan crisis, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("**FIRREA**")[2] in an effort to restore public confidence in the banking system. *See Praxis Props., Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49, 62 (3d Cir. 1991).  FIRREA bestowed on the FDIC broad powers to manage, reorganize, and collect assets of a failed depository institution for the benefit of depositors (and taxpayers). *See In re Landmark Land Co.*, 973 F.2d 283, 289 (4th Cir. 1992).

14.    The powers of the FDIC, as Receiver, include the power to:

> (i)    take over the assets of and operate the insured depository institution with all the powers of the members or shareholders, the directors, and the officers of the institution and conduct all business of the institution;

---

[2] Pub. L. No. 101-73, 103 Stat. 183 (1989) (codified in various sections of Title 12).

MEMORANDUM OF POINTS AND AUTHORITIES

(ii)    collect all obligations and money due the institution;

(iii)    perform all functions of the institution in the name of the institution which are consistent with the appointment as conservator or receiver; and

(iv)    preserve and conserve the assets and property of such institution.

12 U.S.C. § 1821(d)(2)(B).  Additionally, the FDIC may exercise "such incidental powers as shall be necessary" to carry out the powers specifically enumerated in Title 12.  12 U.S.C. § 1821(d)(2)(J).

15.    Consistent with this broad legislative mandate, FIRREA prohibits any court from taking any action "to restrain or affect the exercise of powers or functions of the Corporation as a conservator or receiver."  12 U.S.C. § 1821(j).  Indeed, the comprehensive and exclusive scheme of FIRREA evinces Congress' intent to allow the FDIC "full rein" to exercise its statutory authority to protect depositors and creditors without interference from the courts.  *See Landmark*, 973 F.2d at 290.  Numerous courts have accordingly found themselves without jurisdiction to enjoin or otherwise interfere with actions taken by the FDIC when acting within the scope of its authority as receiver or conservator.  *See, e.g., Bank of Am. Nat'l Ass'n v. Colonial Bank*, 604 F.3d 1239 (11th Cir. 2010); *Gross v. Bell Sav. Bank PA SA*, 974 F.2d 403, 408 (3d Cir. 1992) (holding that "the district court does not have the ability to enjoin activity by the RTC where the Corporation is colorably acting within its enumerated powers."); *Telematics Int'l, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703 (1st Cir. 1992) (federal court lacks jurisdiction to enjoin FDIC from foreclosing on a certificate of deposit to which it acquired a secured interest as receiver); *281-300 Joint Venture v. Onion*, 938 F.2d 35 (5th Cir. 1991) (district court lacked ability to enjoin the RTC, acting as conservator, from foreclosing on property that served as security for the failed institution's loan).

**The Chapter 7 Case**

16.    On November 6, 2009 ("**Petition Date**"), Bancorp filed a voluntary petition for relief pursuant to chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California ("**Bankruptcy Court**").

17.    Helen R. Frazer is the duly appointed Chapter 7 Trustee.

18.     On June 30, 2010, the FDIC-R filed a proof of claim in the Debtor's Chapter 7 cases, fully preserving, *inter alia*, all jurisdictional rights of the FDIC.

## The FDIC-R's Rights as a Fiduciary Under the Internal Revenue Code and Regulations

19.     Section 6402(k) of the Internal Revenue Code provides:

> *Notwithstanding any other provision of law*, in the case of an insolvent corporation which is a member of an affiliated group of corporations filing a consolidated return for any taxable year and which is subject to a statutory or court-appointed fiduciary, the Secretary may by regulation provide that any refund for such taxable year may be paid on behalf of such insolvent corporation to such fiduciary *to the extent that the Secretary determines that the refund is attributable to losses or credits of such insolvent corporation.*

26 U.S.C. § 6402(k) (emphasis added).  The applicable regulations are found in Treas. Reg. § 301.6402-7.

20.     For the purposes of this statute, the FDIC-R is a "fiduciary" to whom such refund may be remitted. *See* Treas. Reg. § 301.6402-7(b)(3)(i). Treas. Reg. § 301.6402-7(b)(3) provides, in pertinent part, that a "fiduciary is (i) [t]he Federal Deposit Insurance Corporation; ... in its capacity as an authorized receiver or conservator of an insolvent financial institution." Treas. Reg. § 301.6402-7(b)(3)(i).  In order to inform the IRS of its fiduciary status, the fiduciary must file Form 56-F, Notice Concerning Fiduciary Relationship of Financial Institution, with the applicable Internal Revenue Service Center. *See* Treas. Reg. § 301.6402-7(d)(1) ("To satisfy the notice requirement of this paragraph (d)(1), the fiduciary must file Form 56–F, Notice Concerning Fiduciary Relationship of Financial Institution, with the Internal Revenue Service Center indicated on the form.").

21.     Prior to the commencement of the Chapter 7 case, in or about September, 2009, the FDIC-R, in connection with the administration of the Bank, submitted a Form 56-F with the IRS.

22.     Because both the FDIC-R and the Trustee claim entitlement to the Tax Refunds, the FDIC-R and the Trustee entered into the Stipulation for the establishment of a reserve account.

23.    In relevant part, Treas. Reg. § 301.6402-7(e)(1) provides that "[i]f … the fiduciary does not accept a claim for refund filed by the common parent, the fiduciary may claim a refund under this section by filing its own claim for refund under section 6402...." Treas. Reg. § 301.6402-7(e)(1).

24.    If a fiduciary elects to file a claim for a refund or an application for a tentative carryback adjustment pursuant to the aforementioned provisions, the IRS "may, in its sole discretion, pay to the fiduciary all or any portion of the refund or tentative carryback adjustment that the Internal Revenue Service determines under this section to be attributable to the net operating losses of the institution." Treas. Reg. § 301.6402-7(g)(1).

25.    Importantly, Treas. Reg. § 301.6402-7(j) provides that the procedures established by this section are "*not determinative of ownership* of any such amount among current or former members of a consolidated group (including the institution)," but merely determine the party to whom the IRS will pay a refund or tentative carryback adjustment.  Treas. Reg. § 301.6402-7(j) (emphasis added).

**The Filing of Consolidated Tax Returns Prior to the Bank Failure and Bankruptcy**

26.    The Internal Revenue Code authorizes affiliated groups to file consolidated income tax returns.  Section 1501 of the Internal Revenue Code provides that "[a]n affiliated group of corporations shall . . . have the privilege of making a consolidated return with respect to the income tax imposed by the [Internal Revenue Code] for the taxable year in lieu of separate returns." 26 U.S.C. § 1501.  Consistent with section 1501 of the IRC, the Secretary of the Treasury has promulgated regulations that allow a parent holding company to file a consolidated tax return as agent for its subsidiaries. *See* Treas. Reg. § 1.1502-77.

27.    Upon information and belief, since at least 2007 and prior to the bankruptcy and the receivership, Bancorp and the Bank ("**Consolidated Group**") elected to file consolidated federal income tax returns under section 1501 of the Internal Revenue Code.

28.    Upon information and belief, Bancorp prepared and filed consolidated tax returns for the Consolidated Group for the tax years 2006 and 2007.  Various consolidated state tax returns were filed for the Consolidated Group for 2008.  Following the Receivership and

1  prior to Bancorp's bankruptcy filing, the FDIC-R filed a federal tax return for the tax year 2008.

2  Pursuant to the Stipulation, the Trustee is preparing tax returns for the year 2009 which may or

3  may not also include NOL carryback elections for the years 2008 and 2009.

4      29.    Upon information and belief, the Bank funded substantially all of the tax

5  payments made by the Consolidated Group for all relevant years by paying those amounts to

6  Bancorp, which in turn remitted payments to the IRS. Upon further information and belief,

7  Bancorp engaged in no other business than acting as the holding company of the Bank.

8  **The 2009 Consolidated Tax Return to be Filed**

9      30.    Upon information and belief, the Bank sustained NOLs in the years 2008 and

10  2009.    Pursuant to applicable tax law, the carryback of these NOLs would entitle the

11  Consolidated Group to a refund of income taxes paid in the previous five years.[3]  Because the

12  Bank funded substantially all of the tax payments made by the Consolidated Group and incurred

13  almost all of the losses, the FDIC-R would be entitled to all or almost all of the Tax Refunds

14  based on the NOLs.  Upon information and belief, the right to Tax Refunds of Bancorp would

15  be solely as a result of the payment of taxes made by the Bank in prior years.

16      31.    September 15, 2010 is the deadline for filing the 2009 consolidated tax return

17  and making NOL carryback elections for 2008 and 2009. This filing deadline, originally March

18  15, 2010, has been extended one time for a six-month period. No further extensions are legally

19  permitted. *See* 26 U.S.C. § 6081(a) (prohibiting the IRS from granting any extension of more

20  than six months except for taxpayers who are abroad).

21  **Exercise of the Tax Rights Does Not Determine Ownership of the Tax Refunds**

22      32.    Treas. Reg. § 301.6402-7(j) expressly provides that the payment by the IRS of

23  any refund or tentative carryback adjustment to the fiduciary is "not determinative of

24  ownership" of any such amount among the members of a consolidated group. Treas. Reg. §

25  301.6402-7(j).

26

27  [3]    In the Worker, Homeownership, and Business Assistance Act of 2009, Pub. L. No. 111-92, § 13, 123 Stat. 2992-93
28  (2009), taxpayers other than TARP recipients were granted a one-time right to elect to carry back NOLs for up to five years
with respect to either their 2008 or 2009 tax years. Under the Internal Revenue Code except as so modified, NOLs may be
carried back only two years.

**MEMORANDUM OF POINTS AND AUTHORITIES**

33.    By this Motion, the FDIC-R is not asking the Bankruptcy Court to determine the "ownership" of the Tax Refunds or whether the Tax Refunds are property of the Debtor's estate or the Receivership.  Such issues will be resolved at a later date by a court of competent jurisdiction.  The FDIC-R has agreed in the Stipulation approved by this Bankruptcy Court that in the event that any Tax Refunds are received, such funds will be deposited into the Escrow Account where they will remain, without any presumption of ownership, until the funds are released pursuant to an agreement by the parties with appropriate notice or by order of a court of competent jurisdiction.  Consequently, no prejudice would inure to the Debtor's estate if this Motion were granted.

## JURISDICTION

34.    Under 12 U.S.C. § 1821(j), "no court may take any action…to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or receiver."  The FDIC-R reserves all of its jurisdictional arguments, under section 1821(j) or otherwise.  *See also* 12 U.S.C. § 1821(d)(13)(D).  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

35.    By this Motion, the FDIC-R seeks an order confirming that the automatic stay does not apply to the FDIC-R's exercise of certain of its Tax Rights or, in the alternative, lifting the automatic stay so that the FDIC-R may exercise its Tax Rights including filing a claim for a refund and/or a loss return for the 2009 tax year and any amendments to prior years' returns as may be permitted under the law, as a fiduciary of the Bank.  Further, in light of the September 15, 2010 deadline, the FDIC-R respectfully requests that if this Court grants relief from the automatic stay pursuant to Bankruptcy Code section 362, that any such order include a waiver of the 14-day stay period provided in Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BASIS FOR RELIEF REQUESTED

### The Automatic Stay Should Not Apply to the Exercise of the Tax Rights

36.     Section 362(a) of the Bankruptcy Code effectuates a stay of, *inter alia*, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case. . . ." 11 U.S.C. § 362(a)(3) and (a)(6).  The stay is not applicable to actions that neither take possession of estate property nor exercise control over it. *See Citizens Bank v. Strumpf*, 516 U.S. 16, 21 (1995) (holding that bank's action of placing an administrative freeze on debtor's account pending resolution of the bank's right of setoff did not violate the automatic stay because the temporary refusal to pay was neither a taking of possession of debtor's property nor an exercising of control over it).

37.     By taking these proposed actions to, among other things, file a claim for a refund and/or file a loss return for the 2008 and/or 2009 tax year as a fiduciary of the Bank, the FDIC-R neither seeks to take possession of estate property nor exercise dominion over it.  Rather, the FDIC-R wishes to exercise the rights granted to it under § 6402 of the IRC and Treas. Reg. § 310.6402-7 to file a loss year tax return and/or a claim for a refund, in its capacity as a fiduciary of a failed depository institution, and such other actions as may be required to protect and preserve the Receivership's interest in such tax proceeds.  As explicitly stated in Treas. Reg. § 310.6402-7(j), a payment by the IRS to the FDIC-R is not a determination of ownership in this regard, but merely discharges the IRS' liability to remit previously overpaid amounts to an agent of a consolidated group.  The FDIC-R agrees to deposit any such Tax Refunds into the Escrow Account, subject to further order by a court of competent jurisdiction.

38.     The exercise by the FDIC-R of its rights as a fiduciary of a failed depository institution under the aforementioned applicable tax law is pursuant to, and consistent with, its statutory duties under Title 12 to, among other things, preserve and conserve the assets and property of such institution. *See* 12 U.S.C. § 1821(d)(2)(B)(iv).

39.     Additionally, the automatic stay does not apply to the exercise of Tax Rights because § 6402(k) of the IRC expressly applies "[n]otwithstanding any other provision of law."

26 U.S.C. § 6402(k).  Because of this statutory language, § 6402(k) controls in the event that there is any potential conflict between it and § 362 of the Bankruptcy Code.  As the Supreme Court has stated, "notwithstanding" clauses consistently are interpreted as overriding conflicting provisions in other statutes:

> As we have noted previously in construing statutes, the use of such a "notwithstanding" clause clearly signals the drafter's intention that the provisions of the "notwithstanding" section override conflicting provisions of any other section.  Likewise, the Courts of Appeals generally have "interpreted similar 'notwithstanding' language . . . to supersede all other laws, stating that "[a] clearer statement is difficult to imagine." *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993).

## To the Extent That It Is Deemed to Apply, Cause Exists to Lift the Automatic Stay to Allow the FDIC-R to Exercise its Tax Rights

40.    Should the Bankruptcy Court determine that the automatic stay applies to the FDIC-R's exercise of the Tax Rights, the stay should be lifted.

41.    Section 362(d)(1) of the Bankruptcy Code provides that:
> the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay – (1) for cause, including the lack of adequate protection of an interest in property of such party in interest. . . .

11 U.S.C. § 362(d)(1).

42.    While the Bankruptcy Code does not define what constitutes "cause," it is broadly construed and determined on a case-by-case inquiry in this Circuit.  *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1900); *see also*, *In re Conejo Enterprises, Inc.*, 96 F.3d 346, 351 (9th Cir. 1996).  The decision to lift the stay is within the discretion of the bankruptcy judge.  *In re MacDonald*, 755 F.2d 715, 716 (9th Cir. 1985).

43.    Courts have also referred to a three-prong balancing test to determine whether to grant relief from the stay, pursuant to which courts should (1) balance the prejudice to the debtor against the hardship to the moving party if the stay remains in effect, (2) consider the efficient use of judicial resources, and (3) on (motions seeking stay relief to pursue litigation in another forum) examine whether a creditor has a probability of success on the merits of his

1 | case. *See In re Aloisi*, 261 B.R. 504, 508 (M.D. Fla. 2001); *In re Paxson Elec. Co.*, 242 B.R.
2 | 67, 70 (Bankr. M.D. Fla. 1999).

3 |       44.    In this case, the totality of the circumstances favor a finding of "cause" for relief
4 | from the automatic stay.  First, the Debtor's estate will not be prejudiced by a lifting of the
5 | automatic stay because the FDIC-R's actions will not affect the ownership of the disputed Tax
6 | Refunds and will take nothing away from the Debtor's estate. The FDIC-R's exercise of its Tax
7 | Rights would ensure that the FDIC-R preserves any claim it may have to the Tax Refunds, but
8 | would not preclude the Trustee from recovering any portion of the refunds to which the
9 | Debtor's estate may be entitled.  Even if the IRS decided to remit the Tax Refunds to the FDIC-
10 | R, the FDIC-R has pledged in the Stipulation to deposit such refunds in the Escrow Account
11 | until the parties' respective rights can be adjudicated.

12 |       45.    Second, the FDIC-R will face substantial hardship if the stay is not lifted.
13 | Should the Trustee propose to file a tax return that does not provide the maximum Tax Refunds
14 | to the Bank, and thus to the receivership, such failure will undermine the rights accorded to the
15 | FDIC-R, under law, to assert a basis for a refund on account of the Bank's NOLs.  This would
16 | work a substantial prejudice on the FDIC-R, as successor to the Bank, because most, if not all,
17 | of the Tax Refunds would be predicated upon taxes paid by the Bank.  If the FDIC-R were
18 | unable to preserve its rights by invoking § 6402 of the IRC and related regulations, the Debtor's
19 | estate could gain a windfall, while the FDIC-R, which represents the interests of the Bank and
20 | its creditors, could be hindered in its ability to seek the equitable allocation of the Tax Refunds.
21 | In the event the Trustee does not decide to make the most favorable NOL carryback election,
22 | the FDIC-R should be permitted to exercise its Tax Rights in order to (i) officially state its
23 | claim to all or a portion of the Tax Refunds to which it is entitled, and (ii) preserve its rights
24 | with respect to such a claim and prevent the possibility that the FDIC-R, in not taking the action
25 | that it has a right and a fiduciary duty to take, could be deemed to have waived any right it has
26 | to all or a portion of the Tax Refunds.  *See United States v. Rodrigues*, 159 F.3d 439, 448 (9th
27 | Cir. 1998) (faulting the RTC for "complain[ing] about a situation it could have prevented from
28 |

1  arising" because it failed to exercise its right, under § 301.6402-7, to apply for the tax refunds

2  due to the failed depository institution for which it was a conservator).

3      46.    Finally, although this factor is inapplicable to the Motion at issue here, the

4  FDIC-R is also likely to succeed on the merits of its claim to the Tax Refunds. Although the

5  issue of "ownership" of any refund is not before the Bankruptcy Court at this time, there is a

6  substantial body of case law that holds that a member of a consolidated group is entitled to a tax

7  refund arising from the filing of a consolidated tax return, where the refund sought constitutes

8  either taxes paid by the consolidated tax group member or losses sustained by that member in

9  the years at issue. *See, e.g., Capital Bancshares v. FDIC*, 957 F.2d 203, 208 (5th Cir. 1992)

10  (FDIC was entitled to the tax refund where the bank generated the losses and the bank paid to

11  the parent company a sum greater in aggregate than the disputed refund for its annual tax

12  contribution); *In re Revco D.S., Inc.*, 111 B.R. 631 (Bankr. N.D. Ohio 1990) (income tax refund

13  belonged to the former subsidiary member of consolidated group where the NOL was entirely

14  attributable to the subsidiary and the refund sought represented the income taxes paid by income

15  generated by the subsidiary); *Fed. Deposit Ins. Corp. v. Mercer Bancorp, Inc.*, Case No. 89-

16  0849, 1990 WL 515173 (W.D. Mo. Dec. 5, 1990) (FDIC, as receiver of subsidiary bank, was

17  entitled to the tax refund because the bank was the entity who overpaid the tax which the IRS

18  refunded and the entity upon whose business losses the refund was based); *Jump v. Manchester

19  Life & Cas. Mgmt. Corp.*, 438 F. Supp. 185 (E.D. Mo. 1977) (bankrupt subsidiary was entitled

20  to its share of the refund generated by its losses and the unrecovered taxes it previously paid,

21  and parent held this portion in specific trust); *In the Matter of Fla. Park Banks, Inc.*, 110 B.R.

22  986 (Bankr. M.D. Fla. 1990) (FDIC, as receiver for bank subsidiary, was entitled to the entire

23  tax refund of taxes previously paid by the bank subsidiary that resulted from its NOLs); see

24  also, *In re Bob Richards Chrysler-Plymouth Corp.*, 473 F.2d 262 (9th Cir. 1973), *cert. denied*

25  (412 U.S. 919).

26      47.    Moreover, the Trustee's mere receipt of tax refunds does not render such funds

27  property of its estate. The parent, as agent for the Consolidated Group for the purposes of

28  administrative convenience in connection with the filing of consolidated tax returns, holds any

Tax Refunds remitted by the IRS on account of such filing in trust for the members of the
Consolidated Group and is under a duty to return the tax refund to the appropriate member. *In
re Bob Richards Chrysler-Plymouth Corp., supra,* 473 F.2d at 265.[4]  This principal-agent
relationship cannot be overridden by a tax sharing agreement unless such an intention is
expressly or impliedly manifested in a written agreement, and even then the court must examine
the economic reality of the transaction rather than the words used. *See BSD Bancorp, Inc. v.
FDIC*, Case No. 93-12207-A11 (S.D. Cal. Feb. 28, 1995) (a copy of the opinion is attached as
Exhibit 2 to the Declaration of Kathryn Kerfes Amira filed concurrently herewith).  Given the
foregoing jurisprudence, the FDIC-R meets its burden to show that "cause" may be lifted to
allow the FDIC-R to exercise its Tax Rights.

48.    The FDIC-R requests that this motion be considered on an expedited basis
because the FDIC-R's right to claim the tax refund at issue in this case will be irrevocably lost if
it is not filed with the IRS by September 15, 2010.

49.    Cause also exists to waive the 14-day stay provided for under Bankruptcy Rule
4001(a)(3) of an order granting the FDIC-R relief from the automatic stay.  Bankruptcy Rule
4001(a)(3) expressly provides the Court with discretion to grant such a waiver.[5]

50.    As previously discussed, September 15, 2010 is the deadline for the FDIC-R to
file refund requests, tax returns and/or amended returns to claim refunds arising from the one-
time opportunity to elect to use 5-year NOL carrybacks that was provided for under recent
amendments to the Internal Revenue Code.  Aware of this deadline, the FDIC-R has sought the

---

[4] A bank holding company may not enter into a tax sharing agreement with its bank subsidiary that alters the *Bob Richards*
rule because such an agreement would be deemed an unsafe and unsound banking practice. See Interagency Policy
Statement on Income Tax Allocation in a Holding Company Structure, 63 Fed. Reg. 64757 (Nov. 23, 1998). Moreover any
intention to override the principal-agent relationship in a tax sharing agreement is not effective unless such an intention is
expressly or impliedly manifested in a written agreement, and even then the court must examine the economic reality of the
transaction rather than the words used. *See*, *BSD Bancorp, Inc. v. FDIC*, Case No. 93-12207-A11 (S.D. Cal. Feb. 28, 1995)
(a copy of the opinion is attached as Exhibit 2 to the Declaration of Kathryn Kerfes Amira filed concurrently herewith).

[5] Under Bankruptcy Rule 4001(a)(3), "[a]n order granting a motion for relief from an automatic stay made in accordance
with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, *unless the court orders otherwise*."
(Emphasis added.)

MEMORANDUM OF POINTS AND AUTHORITIES

1    Trustee's cooperation for months, but the Trustee has delayed sharing a consolidated return with

2    the FDIC-R to the point that this motion is now necessary.

3        51.    Under the circumstances, waiver of the 14-day stay period provided for under

4    Bankruptcy Rule 4001(a)(3) plainly is warranted.

5        WHEREFORE, the FDIC-R respectfully requests that this Court enter an Order, in the

6    form attached hereto (i) confirming that the automatic stay does not apply to the FDIC-R's

7    exercise of its Tax Rights, or alternatively; (ii) lifting the automatic stay so that the FDIC-R

8    may exercise the Tax Rights including filing a claim for a refund and/or a loss return for the

9    2009 tax year as a fiduciary of the Bank, and any amendments to prior year's returns as may be

10   permitted under law, with any refund that may be remitted to the FDIC-R by the IRS on account

11   of such filing to be deposited in the Escrow Account as described above for determination by

12   this Court hereafter; (iii) waiving the 14-day stay prescribed by Federal Rule of Bankruptcy

13   Procedure 4001(a)(3); and (iv) granting such other and further relief as this Court may deem

14   just and proper.

15

16   Dated: August 17, 2010                      Respectfully submitted,

17                                               QUATEMAN LLP
                                                 Lisa Greer Quateman
18                                               Kathryn Kerfes Amira

19

20                                               By: */s/ Kathryn Kerfes Amira*
                                                       Kathryn Kerfes Amira
21                                                 Attorneys for the Federal Deposit
                                                   Insurance Corporation

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 5 of* ____     **F 4001-1M.NA**

| In re | (SHORT TITLE) | CHAPTER: 7 |
|-------|---------------|------------|
| Temecula Valley Bancorp, Inc., | Debtor(s). | CASE NO.: 6:09-bk-36828-DS |

## DECLARATION RE ACTION IN NON-BANKRUPTCY FORUM
### (MOVANT: Federal Deposit Insurance Corporation, as Receiver )

I, <u>Dennis J. Early</u> , declare as follows:
    *(Print Name of Declarant)*

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding the state court lawsuit, administrative proceeding, or other action in a non-bankruptcy forum ("Non-bankruptcy Action") that is the subject of this Motion because:

    a. ☐ I am the Movant.

    b. ☐ I am the Movant's attorney of record in the Non-bankruptcy Action.

    c. ☒ I am employed by the Movant as *(state title and capacity)*: Counsel

    d. ☐ Other *(specify)*:

2.  I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the Non-bankruptcy Action. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3.  The Non-bankruptcy Action at issue is currently pending as:

    Case name: No action pending
    Docket number:
    Court or agency where pending:

4.  **Procedural Status:**

    a.  The causes of action pleaded in the non-bankruptcy forum are *(list)*:
        N/A

        True and correct copies of the pleadings filed before the non-bankruptcy forum are attached hereto as Exhibit _____ .

    b.  The Non-bankruptcy Action was filed on *(specify date)*: N/A

    c.  Trial or hearing began/is scheduled to begin on *(specify date)*: N/A

    d.  The trial or hearing is estimated to require the following number of court days *(specify)*: N/A

    e.  Other defendants to the Non-bankruptcy Action are *(specify)*: N/A

5.  **Grounds for relief from stay:**

    a. ☐ The claim is insured. The insurance carrier and policy number are *(specify)*:

*(Continued on next page)*

*December 2009*                                                                  **F 4001-1M.NA**

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 6 of* ___    **F 4001-1M.NA**

| In re    (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| Temecula Valley Bancorp, Inc.,    Debtor(s). | CASE NO.: 6:09-bk-36828-PC |

b. ☐ The matter can be tried more expeditiously in the non-bankruptcy forum.

   (1) ☐ It is currently set for trial on:

   (2) ☐ It is in advanced stages of discovery and Movant believes that it will be set for trial by *(specify date)*:
The basis for this belief is *(specify)*:

   (3) ☐ The matter involves non-debtor parties who are not subject to suit in the bankruptcy court.  A single trial in the non-bankruptcy forum is the most efficient use of judicial resources.

c. ☐ The bankruptcy case was filed in bad faith specifically to delay or interfere with the prosecution of the Non-bankruptcy Action.

   (1) ☐ Movant is the only creditor (or the only substantial creditor) scheduled by the Debtor(s).

   (2) ☐ The timing of the petition filing shows that it was intended to delay or interfere with the Non-bankruptcy Action based upon the following facts *(specify)*:

   (3) ☐ Debtor(s) does(do) not have a reasonable likelihood of reorganizing in this Chapter ☐ 11 ☐ 13 bankruptcy case based upon the following facts *(specify)*:

d. ☒ For other facts justifying relief from stay, see attached continuation page.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on** (see attached) _____ , _____ , at _____ *(city, state)*.

(see attached) *Dennis V. Early*
**Print Declarant's Name**

_____
**Signature of Declarant**

_____

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*    **F 4001-1M.NA**

Motion for Relief from Stay (Non-Bankruptcy Action)

**In Re Temecula Valley Bancorp, Inc., U.S.B.C. Case No. 6:09-bk-36828-DS**

**<u>Declaration of Dennis J. Early</u>**

**<u>Paragraph 5.d, Continued</u>:**

(1)    On July 17, 2009 (the "**Bank Closing Date**"), the California Department of Financial Institutions closed Temecula Valley Bank ("**Bank**") and appointed the Federal Deposit Insurance Corporation ("**FDIC**") as the Receiver of the Bank ("**FDIC-R**"). Immediately after the FDIC was appointed as the Receiver, the FDIC-R entered into a Purchase and Assumption Agreement (the "**Agreement**") with First Citizens Bank and Trust Company, Raleigh, NC for the purchase of the Bank. The FDIC-R retained certain interests and assets under the Agreement, including the rights to any and all tax refunds to which the Bank would be entitled.

(2)    Prior to the Bank Closing Date, Temecula Valley Bancorp Inc., the debtor herein ("**Bancorp**" or "**Debtor**"), was the holding company of the Bank incorporated in the State of California.

(3)    The FDIC-R believes that if it does not file a tax return electing to carryback certain net operating losses ("**NOLs**") of the Bank by September 15, 2010, the right to use these NOLs will be forever lost.

(4)    The FDIC-R seeks an order which would allow the FDIC-R to protect its rights to the NOLs. If the Court does not enter the requested Order by September 15, 2010, the FDIC-R could irrevocably lose the right to claim anticipated federal income tax refunds ("**Tax Refunds**"), which will irreparably damage the depositors and creditors of the receivership, and potentially the creditors of the estate of the Debtor.

(5)    The FDIC-R worked diligently with Helen R. Frazer, Chapter 7 Trustee ("**Trustee**") to reach a Stipulation for the Establishment of a Reserve Account ("**Stipulation**") into which all Tax Refunds will be placed ("**Escrow Account**"). The Stipulation was approved by this Court's order entered on April 23, 2010 and provides that the Trustee will file a

1   consolidated tax return for the Debtor and the Bank.  Despite repeated requests by the FDIC-R,

2   the Trustee's professionals have not confirmed that the tax return will include the NOLs

3   carryback election, leaving the FDIC-R no choice but to file this Motion in order to protect the

4   FDIC-R from forever losing the benefit of the NOLs.  The FDIC-R and the Trustee have each

5   agreed to deposit Tax Refunds received for the consolidated tax group consisting of Bancorp

6   and the Bank in the Escrow Account.  A copy of the Stipulation is attached hereto as Exhibit 1.

7      (6)   The FDIC is charged with the preservation and collection of all assets of a failed

8   depository institution for the benefit of depositors and taxpayers.  To fulfill this obligation, the

9   FDIC must preserve its rights to any tax refunds that may be owing to failed depository

10   institutions.  The FDIC-R sent the Trustee the Proforma 2009 Form 1120 U.S. Corporation

11   Income Tax Return for the Bank on May 17, 2010.  The Trustee's counsel pressed the FDIC-R

12   at the time to provide the Bank's return, recognizing that it was "crunch time" to prepare the

13   consolidated return.  Nonetheless, the Trustee failed to provide the FDIC-R with the completed

14   tax return for review.

15      (7)   The Stipulation provides that the Trustee must obtain the FDIC-R's consent to

16   the draft consolidated tax return and that the FDIC-R would have ten business days to review

17   the return.  The FDIC-R advised the Trustee regarding NOL elections, but the Trustee has

18   failed and refused to communicate her intention with respect to the elections she will make, if

19   any, in the tax return.  As such, the FDIC-R is reasonably concerned that the tax return

20   prepared by the Trustee will not properly protect the rights of the FDIC-R.  During the time

21   that the Stipulation was negotiated, the Trustee and the FDIC-R communicated frequently and

22   ten business days seemed an adequate amount of time for the FDIC-R's review of the tax

23   return.  The FDIC-R is unaware of any reason why the Trustee has withheld the tax return and,

24   thus, believes that the intent in doing so may be to thwart its efforts to seek relief from this

25   Court should the Trustee not include NOL carryback elections in the draft return.  If the FDIC-

26   R does not receive the return until August 23, 2010, the date the Trustee now states it will be

27   provided, the FDIC-R will be unduly prejudiced if the return fails to provide the greatest

28

1    possible Tax Refunds available.  By the granting of the Motion, the FDIC-R will be able to file

2    a separate return for the Bank to preserve the tax credits if it is necessary to do so.

3

4        I declare under penalty of perjury under the laws of the United States of America that

5    the foregoing is true and correct.

6        Executed this 16th day of August, 2010, at Arlington, Virginia.

7

8

9        DENNIS J. EARLY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| In re:<br><br>TEMECULA VALLEY BANCORP, INC.,<br><br>Debtor(s). | CHAPTER 7<br><br>CASE NUMBER 6:09-bk-36828-DS |
| --- | --- |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Quateman LLP, 1801 Century Park East, Suite 1801, Los Angeles, California  90067

A true and correct copy of the foregoing document described as NOTICE AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 17, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

| | |
| --- | --- |
| United States Trustee (RS) ustpregion16.rs.ecf@usdoj.gov | Marie C. Pollio   bankruptcy@goodwin.com |
| Helen R. Frazer  hfrazer@aalrr.com | |
| Sameer K. Kapoor   skapoor@kilpatrickstockton.com | |

☐ Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On __August 17, 2010_____I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

| Honorable Deborah J. Saltzman<br>United States Bankruptcy Court<br>3420 Twelfth Street, Courtroom 302<br>Riverside, California  92501-3819 | United States Bankruptcy Court<br>3420 Twelfth Street, Room 125<br>Riverside, California  92501-3819 |
| --- | --- |

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 17, 2010 | Jeff Navarro | /s/ Jeff Navarro |
| --- | --- | --- |
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re:                              |            | CHAPTER 7 |
| TEMECULA VALLEY BANCORP, INC., |            |           |
|                                     | Debtor(s). | CASE NUMBER 6:09-bk-36828-DS |

Counsel for Debtor:
Lawrence C. Meyerson, Esq.
Lawrence C. Meyerson, a PLC
578 Washington Boulevard, Suite 867
Marina del Rey, California  90292

Debtor:
Temecula Valley Bancorp, Inc.
28046 Del Rio Road, Suite C
Temecula, California  92590-2612

Counsel for Chapter 7 Trustee
Michael Kosnitzky
Boies, Schiller & Flexner LLP
575 Lexington Avenue, 7th Floor
New York, New York 10022

Requests for Special Notice:
Todd C. Meyers, Esq.
Sameer K. Kapoor, Esq.
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street, NE
Atlanta, Georgia  30309-4530

Suzanne Macdonald
Rodney Square North
1100 North Market Street
Wilmington, Delaware  19890-1615

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**