1   Jennifer G. Altman (*pro hac vice*)
2   BOIES, SCHILLER & FLEXNER LLP
    100 S.E. 2nd Street – Suite 2800
3   Miami, FL 33131
    Telephone:  (305) 539-8400
4   Facsimile:   (305) 539-1307
5   Florida Bar No. 881384
    jaltman@bsfllp.com
6

7               UNITED STATES BANKRUPTCY COURT

8                CENTRAL DISTRICT OF CALIFORNIA

9                      RIVERSIDE DIVISION

10  In re                          )  Case No. 6:09-bk-36828-SY
11                                 )
    TEMECULA VALLEY                )  Chapter 7
12  BANCORP INC.,                  )
13                                 )
    a California corporation.      )
14

15                          APPLICATION OF HELEN R. FRAZER,
                            CHAPTER 7 TRUSTEE, FOR ORDER (1)
16                          AUTHORIZING EMPLOYMENT OF KLEE,
                            TUCHIN, BOGDANOFF & STERN LLP AS
17                          SPECIAL LITIGATION CO-COUNSEL, (2)
                            AMENDING THE ORDER AUTHORIZING
18                          EMPLOYMENT OF BOIES, SCHILLER &
                            FLEXNER LLP, AND (3) APPROVING
19                          CONTINGENCY FEE COMPENSATION
                            ARRANGEMENTS FOR BOTH FIRMS
20                          PURSUANT TO BANKRUPTCY CODE
                            SECTIONS 327(a), 327(e), AND 328(a);
21                          DECLARATIONS IN SUPPORT THEREOF
22

23                                **Hearing**
24  Date:  September 11, 2014
    Time:  9:30 a.m.
25  Place: Courtroom 302
26         3420 Twelfth Street
           Riverside, CA 92501-3819
27

28

1  **TO THE HONORABLE SCOTT H. YUN, UNITED STATES BANKRUPTCY**
2  **JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND ALL OTHER**
3  **PARTIES ENTITLED TO NOTICE:**

4      As permitted by Bankruptcy Code[1] sections 327(a), 327(e), and 328(a) and
5  Bankruptcy Rules[2] 2014(a) and 2016, Helen R. Frazer, chapter 7 trustee (the "Trustee") for
6  the estate of Temecula Valley Bancorp, Inc. (the "Debtor" and its bankruptcy estate, the
7  "Estate"), hereby applies (the "Application") for entry of an order (1) authorizing the
8  employment of Klee, Tuchin, Bogdanoff & Stern LLP ("KTB&S") as special litigation co-
9  counsel effective July 1, 2014, for the purposes and pursuant to the terms and conditions set
10 forth in this Application, (2) amending, superseding and replacing the Court's order entered
11 on February 25, 2010 [Docket No. 16] ("BSF Employment Order") and approving the
12 employment of Boies, Schiller & Flexner LLP ("BSF") as special litigation co-counsel,
13 effective July 1, 2014, in accordance with the terms and conditions set forth in the
14 Application, (3) approving the terms and conditions for compensation of BSF and KTB&S
15 pursuant to Bankruptcy Code section 328(a) in accordance with the contingent fee
16 compensation arrangements set forth herein, and (4) limiting the Court's review of any
17 contingency fees earned by BSF or KTB&S to the standards set forth in Bankruptcy Code
18 section 328(a). In support of this Application, the Trustee submits the accompanying
19 *Declaration of Michael Kosnitzky* (the "Kosnitzky Declaration") and *Declaration of Daniel*
20 *J. Bussel* (the "Bussel Declaration") and respectfully represents and shows as follows:

21                                     **I.**

22                              **JURISDICTION**

23      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.
24 This is a core proceeding pursuant to 28 U.S.C. §157(b) and is a matter that the Court may
25 finally adjudicate consistent with Article III of the Constitution. Venue is proper before this

---

[1]  The "Bankruptcy Code" refers to title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

[2]  The "Bankruptcy Rules" refer to the Federal Rules of Bankruptcy Procedure.

1    Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and other predicates for the

2    relief sought herein are Bankruptcy Code sections 327 and 328 and Bankruptcy Rules

3    2014(a) and 2016.

**II.**

**RELIEF REQUESTED**

A.    Employment of KTB&S.

7        The Trustee desires to employ KTB&S as special litigation co-counsel along with

8    BSF to represent her in connection with litigation with the Federal Deposit Insurance

9    Corporation (the "FDIC") concerning approximately $34 million of tax refunds, including

10   any related appeals (the "FDIC Tax Litigation").    KTB&S has extensive experience

11   regarding similar disputes in other matters.    Without limitation, KTB&S serves as

12   bankruptcy counsel to the Chapter 7 trustee in the IndyMac Bancorp bankruptcy case

13   pending in this Court (before Judge Bluebond), and successfully prosecuted the IndyMac

14   trustee's tax-refund-related litigation with the FDIC in this Court, in the District Court, and

15   in the subsequent successful appeal to the Ninth Circuit. *See Siegel v. FDIC (In re IndyMac*

16   *Bancorp, Inc.)*, Adv. Proc. No. 2:09-ap-01698-BB, 2012 WL 1037481 (Bankr. C.D. Cal.

17   Mar. 29, 2012), *report and recommendation approved and adopted by* No. CV 12-02967-

18   RGK, 2012 WL 1951474 (C.D. Cal. May 30, 2012), *aff'd*, 554 F. App'x 668 (9th Cir. 2014),

19   *reh'g & reh'g en banc denied* (9th Cir. June 27, 2014).  As described below, the litigation

20   with the FDIC in the *IndyMac* case involved issues similar to those that will be litigated in

21   the FDIC Tax Litigation, and the Trustee accordingly believes that KTB&S will add

22   considerable pertinent expertise and experience to the Trustee's legal team.  A summary of

23   the experience and qualifications of the KTB&S attorneys anticipated to have primary

24   responsibility for this matter – Daniel J. Bussel, David M. Stern, and Whitman L. Holt – is

25   attached hereto as Exhibit 1.    Beyond its experience with several substantially similar

26   disputes, KTB&S is composed of attorneys who limit their practice to the areas of corporate

27   transactions, bankruptcy and commercial trial and appellate litigation, insolvency,

28   reorganization, and bankruptcy law.  All attorneys comprising or associated with KTB&S

Application for Employment of KTB&S
and Amendment of Order on Employment of BSF

1    who will render services in the FDIC Tax Litigation are duly admitted to practice law in the

2    courts of the State of California and in the United States District Court for the Central

3    District of California.

4         KTB&S's employment as the Trustee's special litigation co-counsel does not include

5    the provision of any services outside the context of the FDIC Tax Litigation and certain

6    "Collateral Matters", as defined below. It is the view of the Trustee that the resolution of the

7    FDIC Tax Litigation is the essential predicate to further administration of the Estate,

8    including dealing with other claims asserted between the Estate and the FDIC. The $34

9    million tax refund is held in a segregated reserve fund (the "Reserve Fund") that is the

10   largest asset of the Estate and the principal source of potential liquidity in this case. If the

11   FDIC were to prevail in the FDIC Tax Litigation then further litigation between the parties is

12   theoretical and remote: it would cost more than the remaining stakes over which the parties

13   would be fighting. If the Trustee reaches a favorable settlement or were to prevail and obtain

14   full control over the escrowed funds, the Estate would have ample resources to fund further

15   litigation to the extent necessary to resolve any remaining disputes. The problem the Trustee

16   faces in pursuing the FDIC Tax Litigation on a priority basis is the need to attract counsel

17   willing to litigate those issues on a contingency fee basis in light of the current illiquid

18   condition of the Estate. Accordingly, KTB&S's engagement shall not involve the retention

19   of KTB&S as general bankruptcy counsel for the Trustee or the provision of any services

20   regarding this bankruptcy case other than with respect to the FDIC Tax Litigation and

21   Collateral Matters. Other services, including, without limitation, the litigation of any claims

22   asserted by the FDIC that do not relate to the disputed tax refunds and are not Collateral

23   Matters, are outside the scope of KTB&S's engagement.

24        As discussed in more detail below, the Trustee is seeking not only to employ KTB&S

25   as special counsel with respect to the FDIC Tax Litigation and Collateral Matters, but also to

26   obtain approval for compensating that firm on a contingency basis pursuant to Bankruptcy

27   Code sections 327(e) and 328(a).

28

Application for Employment of KTB&S
and Amendment of Order on Employment of BSF

B.    Amended Employment of BSF.

The Trustee also wishes to amend and supersede the employment of BSF as its counsel in connection with this case effective July 1, 2014, as set forth herein. As has been the case since this court issued the Order [Docket No. 16] granting the BSF Application (defined below), Michael Kosnitzky, Jennifer Altman, and Matt Kaden of BSF are the primary attorneys representing the Trustee, and they will now be serving as special litigation co-counsel with KTB&S in the FDIC Tax Litigation and Collateral Matters. As discussed in the original application, BSF is composed of attorneys who practice in the areas of corporate transactions, tax, and litigation, and BSF is well qualified to represent the Trustee.

As described in detail in Section II.A, above, and Section IV, below, further administration of the Estate is predicated on the Trustee's successful prosecution of the FDIC Tax Litigation, which is required to preserve the $34 million in tax refunds that constitutes the primary asset of the Estate. Due to the lack of liquidity in the Estate pending resolution of the FDIC Tax Litigation, the change in the nature of the work to be performed, and the addition of KTB&S, BSF seeks approval to compensate the firm for its work, which will be limited to the FDIC Tax Litigation and the Collateral Matters, on a contingency basis pursuant to Bankruptcy Code sections 327 and 328(a), effective July 1, 2014.

Since BSF will no longer be engaged as general bankruptcy counsel for the Trustee, to the extent that issues requiring such services become necessary, the Trustee shall determine whether she will handle any future general bankruptcy case matters and/or whether she will retain separate bankruptcy counsel to do so, as such matters arise.

### III.

### BACKGROUND

The Debtor owns all of the outstanding stock of Temecula Valley Bank (the "Bank"). On July 17, 2009, the Bank was closed by the California Department of Financial Institutions. Subsequently, the FDIC placed the Bank in receivership, seizing control of the Bank's books, records and other papers, substantially all of which were physically maintained at the Bank.

Application for Employment of KTB&S
and Amendment of Order on Employment of BSF

1    On November 6, 2009 (the "Petition Date"), the Debtor filed a petition for relief under
2    Chapter 7 of the Bankruptcy Code and the Trustee was appointed Chapter 7 trustee in the
3    above-captioned case.

4    The Trustee has employed a number of professionals, including BSF pursuant to the
5    Application of Trustee to Employ General Counsel [Docket No. 11] ("BSF Application"),
6    which was granted by the BSF Employment Order [Docket No. 16].

7    The handling of the issues relating to the tax refunds and the Estate's interests that are
8    adverse to the FDIC has been arduous, and it is expected that the intensity of the work to be
9    performed will significantly increase as the parties move into the litigation phase of the
10   dispute in the FDIC Tax Litigation.   Shortly after the Trustee's appointment as interim
11   trustee, she learned that the FDIC is in possession of substantially all of the Debtor's books
12   and records because they were maintained at the corporate headquarters of the Bank.  As a
13   result, the Trustee and her professionals did not have access to the Debtor's books and
14   records.

15   Consistent with her duties to investigate the financial affairs of the Debtor and to
16   collect and reduce to money the property of the Estate, the Trustee, with the assistance of
17   her professionals, immediately began her investigation of the events and transactions
18   culminating in the failure of the Bank and, subsequently, this chapter 7 bankruptcy case,
19   including attempting, generally unsuccessfully, to obtain information from the FDIC.

20   The Trustee discovered, *inter alia*, that the Debtor was and would be due large tax
21   refunds under applicable tax law and a tax sharing agreement between itself and the Bank
22   (the "Tax Sharing Agreement").   On June 30, 2010, the FDIC filed a Proof of Claim
23   [Claim No. 11], asserting, *inter alia*, its ownership over the tax refunds ("Proof of
24   Claim").[3]   In connection with the FDIC's filing of its Proof of Claim, BSF negotiated a
25   stipulation with the FDIC that provided that the ownership of the anticipated tax refunds

26
27   ---
     [3]   The Proof of Claim contains other, unsubstantiated claims for undetermined amounts, to which the
          Trustee also objects. Although the FDIC reserved its right to supplement the Proof of Claim, it has not
          done so.
28

Application for Employment of KTB&S
and Amendment of Order on Employment of BSF

1  was in dispute and that, when received, the disputed tax refunds would be held in a

2  segregated reserve account maintained by the Trustee, pending the completion of one of

3  two release procedures (the "Stipulation") [Docket No. 24]. The Stipulation was approved

4  by order of this Court on April 23, 2010 [Docket No. 27].

5     Shortly after the Stipulation was approved, the Internal Revenue Service ("IRS")

6  initiated an audit of the consolidated returns of the Debtor-Bank consolidated group. The

7  audit, which lasted almost 3 years, involved a number of complex issues and required

8  cooperation from the FDIC, which could not be obtained at times, given the adversarial

9  posture of the FDIC *vis-à-vis* the Trustee with respect to the tax refunds. Nevertheless, due

10 to the management of the audit by BSF and the Trustee's other professionals, the audit

11 actually resulted in an aggregate *increase* in the tax refunds due to the Trustee. Finally, in

12 March 2013, the Trustee received and deposited the tax refunds in the Reserve Account.

13 The refunds received to date by the Trustee (including a $1 million refund received from

14 the California Franchise Tax Board) exceed $33 million.

15     Many of the issues involved in the parties' dispute about ownership of the tax

16 refunds in this case were presented to the Ninth Circuit Court of Appeals in *FDIC v. Siegel*

17 *(In re IndyMac Bancorp, Inc.)*. The case was at the Ninth Circuit on appeal by the FDIC

18 after this Court (through Judge Bluebond) issued a Report and Recommendation ruling that

19 the tax sharing agreement between the bank and debtor holding company controlled the

20 ownership of the disputed tax refunds and established ownership in the debtor holding

21 company, which Report and Recommendation was adopted by the District Court for the

22 Central District of California. *See Siegel v. FDIC (In re IndyMac Bancorp, Inc.)*, Adv.

23 Proc. No. 2:09-ap-01698-BB, 2012 WL 1037481 (Bankr. C.D. Cal. Mar. 29, 2012), *report*

24 *and recommendation approved and adopted by* No. CV 12-02967-RGK, 2012 WL

25 1951474 (C.D. Cal. May 30, 2012), *aff'd*, 554 F. App'x 668 (9th Cir. 2014), *reh'g & reh'g*

26 *en banc denied* (9th Cir. June 27, 2014). Recognizing that *IndyMac* would likely control

27 the key issues here, rather than commencing litigation at that time, the Trustee and FDIC

28 negotiated a Tolling Agreement, which suspended these proceedings until a mandate issued

Application for Employment of KTB&S
and Amendment of Order on Employment of BSF

1   in *IndyMac*. *See* Motion to Approve Tolling Agreement [Docket No. 88]; Order Granting

2   Motion to Approve Tolling Agreement [Docket No. 99].   On April 21, 2014, the Ninth

3   Circuit issued a memorandum disposition in the *IndyMac* appeal, affirming the District

4   Court's ruling that the tax sharing agreement controlled the ownership of the tax refunds

5   and that the debtor bank holding company was the owner of the tax refunds under the tax

6   sharing agreement and the District Court's wholesale adoption of Judge Bluebond's Report

7   and Recommendation. *See IndyMac*, 554 F. App'x at 670-71. On June 27, 2014, the Ninth

8   Circuit denied the FDIC's petition for rehearing and rehearing *en banc*.   Under Rule 41 of

9   the Federal Rules of Appellate Procedure, the mandate was issued in the *IndyMac* appeal

10  on July 9, 2014, and, thus, the Tolling Agreement has been terminated by its terms.

11  Accordingly, litigation relating to the tax refunds must now commence, necessitating the

12  amendment of the Estate's relationship with BSF and the retention of KTB&S.

13                                               IV.

14              **THE NEED FOR CONTINGENCY FEE ARRANGEMENTS**

15                        **WITH BSF AND KTB&S**

16         On the Petition Date, the Estate had approximately $1,269,336 in cash, and as of July

17  16, 2014, the Estate had approximately $421,575.83 remaining.   In researching potential

18  claims, handling an IRS audit, and preparing annual income tax returns for the consolidated

19  group including the Debtor and the failed Bank, the Estate has expended approximately

20  $850,000 for fees and costs of the Trustee's professionals through May 31, 2013, and other

21  costs of administration to date, including fees of the Trustee. On July 16, 2014, BSF filed its

22  fifth interim fee application. On August 12, 2014, this court issued an Order [Docket No.

23  128] allowing $114,828 in fees and $1,354.35 in expenses.   The Trustee's other

24  professionals will soon file applications for their fees and expenses for the period from June

25  1, 2013 through June 30, 2014.

26         Substantial work will be required to prosecute the FDIC Tax Litigation and the

27  Collateral Matters and, given the cash remaining in the Estate, the Trustee would not be in

28  a position to litigate the FDIC Tax Litigation absent the retention of BSF and KTB&S as

1  co-counsel in that litigation on a contingency fee basis.  It is essential, therefore, that the

2  Trustee arrange for and implement the changes sought herein so that she can preserve the

3  resources of the Estate and obtain control of additional resources, namely the tax refunds at

4  issue.    Indeed, aside from the small amount of cash remaining, the tax refunds of

5  approximately $34 million are the only asset of the Estate.  To ensure this asset is

6  preserved, a team of highly-dedicated professionals will be required, but, given the small

7  amount of cash, the Estate is unable to retain such professionals to litigate this matter on an

8  hourly-rate basis.  Only if there is a successful resolution of the FDIC Tax Litigation will

9  there be any need for resolution of other claims between the Estate and the FDIC, but in

10 that eventuality there will then be ample resources for the Trustee to retain and compensate

11 counsel on customary hourly rates.    Accordingly, this contingency fee arrangement is

12 properly limited to compensating counsel needed to bring the FDIC Tax Litigation to a

13 successful resolution.  Although other potential FDIC claims against the Estate unrelated to

14 the tax refunds would be worthless if the FDIC prevails in the FDIC Tax Litigation

15 (because the Estate would have no material assets), the Trustee, BSF, and KTB&S

16 recognize that the FDIC may nevertheless assert such claims during the pendency of the

17 FDIC Tax Litigation.    As part of bringing the FDIC Tax Litigation to a successful

18 resolution, BSF and KTB&S agree to use their best efforts to have any claims unrelated to

19 the ownership of the tax refunds stayed or otherwise postponed pending final resolution of

20 the FDIC Tax Litigation (the stay, postponement or timing of litigation of any non-tax

21 refund related claims, but not any aspect of the merits of any such claims, the "Collateral

22 Matters").

23        In light of the declining cash in the Estate and the imperative to enable the Trustee to

24 pursue the FDIC Tax Litigation, the Trustee has determined that the most prudent course of

25 action is to engage counsel to continue to render the legal services required for the FDIC Tax

26 Litigation on a contingent fee basis.  BSF and KTB&S have agreed to such an arrangement,

27 which is described in detail in the balance of this Application.  By way of summary, under

28 the contingent fee component, BSF and KTB&S will have the opportunity to receive a

Application for Employment of KTB&S
and Amendment of Order on Employment of BSF

portion of the recoveries from the FDIC Tax Litigation to be pursued by the two firms, on terms that fairly balance the interests of the Estate and those professionals.

The Trustee recognizes that, although the potential value of the Estate's claim to ownership of the tax refunds may be very significant, the claim may prove to be valueless if the FDIC prevails or if the Estate is not in a position to litigate that claim to finality. As such, the Trustee needs to ensure that the Estate is adequately represented with respect to all of the matters that need to be handled by her counsel, while at the same time ensuring that litigation is prosecuted vigorously but on terms that will not consume all of the remaining cash in the Estate. The contingency fee arrangement set forth in this Application will allow the Trustee to meet these objectives. As with any contingency agreement, this arrangement gives counsel strong incentives to maximize recoveries for the Estate, but, if there is no recovery, the Estate will not have expended its remaining resources on such litigation.

The Trustee considered several potential law firms, including her current professionals in this case, to undertake the FDIC Tax Litigation on a contingent fee basis. In the process of determining a reasonable fee arrangement in these circumstances, the Trustee considered many factors, which are discussed in detail below, that led her to conclude that retaining the attorneys on the terms herein, rather than replacing them with other well-qualified counsel who do not have the knowledge gained by these attorneys in this case, will maximize recoveries and minimize costs for the Estate.

The Trustee is familiar with the professional credentials, positive reputation, and experience of the BSF and KTB&S teams in general and in this case in particular, and therefore retention of these firms pursuant to the Application is reasonable, appropriate, and in the best interests of the Estate and its creditors. Accordingly, the Trustee desires to amend the employment of BSF and to employ KTB&S as described herein.

The next Section of this Application sets forth the scope of services to be rendered by BSF and KTB&S. Section VI sets forth the terms of the employment, and the balance of the Application further explains why the employment and compensation terms set forth herein are appropriate under the circumstances.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# V.

## SCOPE OF EMPLOYMENT

A.    KTB&S.

The Trustee seeks to employ KTB&S as the Trustee's special litigation co-counsel, to render such ordinary and necessary legal services as may be required with respect to the FDIC Tax Litigation and Collateral Matters, all on the terms and conditions set forth more fully in the Retention Agreement attached hereto as Exhibit 2.  In particular, KTB&S will perform the following services, as and when requested by the Trustee:

1.    Co-counseling with BSF to prosecute the FDIC Tax Litigation before this Court.

2.    Co-counseling with BSF to represent the Estate in any appeals or other litigation before the District Court, the Ninth Circuit Court of Appeals, or the Supreme Court of the United States in connection with the FDIC Tax Litigation.

3.    Co-Counseling with BSF to represent the Estate in litigation in this Court or in appeals before the District Court, the Ninth Circuit Court of Appeals, or the Supreme Court of the United States in connection with Collateral Matters.

KTB&S's employment as the Trustee's special litigation co-counsel does not include the provision of any services outside the context of the FDIC Tax Litigation and the Collateral Matters.  In particular, and for the avoidance of doubt, KTB&S's engagement shall not involve the retention of KTB&S as general bankruptcy counsel for the Trustee or the provision of any services regarding this bankruptcy case other than with respect to the FDIC Tax Litigation and the Collateral Matters.  Other services, including, without limitation, the litigation of any claims asserted by the FDIC that do not relate to the disputed tax refunds, other than the Collateral Matters, are outside the scope of KTB&S's employment.

Application for Employment of KTB&S
and Amendment of Order on Employment of BSF

1      In the event the Trustee requests that KTB&S undertake matters beyond the scope of

2  the responsibilities set forth above, and should KTB&S agree to do so (in its sole discretion),

3  the Trustee will seek further order of this Court prior to KTB&S doing so.

4      B.   BSF.

5      The Trustee seeks to amend and supersede the BSF Employment Order and change

6  the terms and conditions of her employment of BSF as counsel to those set forth below and

7  more fully in the BSF Retention Agreement attached hereto as Exhibit 3. In particular, going

8  forward, BSF will only perform the following services, as and when requested by the

9  Trustee:

10      1.   Co-counseling with KTB&S to prosecute the FDIC Tax Litigation before this

11            Court.

12      2.   Co-counseling with KTB&S to represent the Estate in any appeals or other

13            litigation before the District Court, the Ninth Circuit Court of Appeals, or the

14            Supreme Court of the United States in connection with the FDIC Tax

15            Litigation.

16      3.   Co-Counseling with KTB&S to represent the Estate in litigation in this Court

17            or in appeals before the District Court, the Ninth Circuit Court of Appeals, or

18            the Supreme Court of the United States in connection with Collateral Matters.

19      4.   Using its best efforts to assist the Trustee in identifying and negotiating

20            litigation financing arrangements with respect to any future litigation that is

21            neither FDIC Tax Litigation nor Collateral Matters, including, without

22            limitation, litigation against the FDIC with respect to claims asserted by the

23            FDIC that are unrelated to the tax refunds.

24      BSF's employment as the Trustee's litigation co-counsel does not include the

25  provision of any services outside the context of items 1-4 enumerated above. In particular,

26  and for the avoidance of doubt, BSF's engagement shall not involve the retention of BSF as

27  general bankruptcy counsel for the Trustee or the provision of any services regarding this

28  bankruptcy case other than with respect to items 1-4 above. Other services, including,

without limitation, the litigation of any claims asserted by the FDIC that do not relate to the disputed tax refunds, other than the Collateral Matters, are outside the scope of BSF's employment. The Trustee shall determine whether she will handle any future general bankruptcy case matters and/or whether she will retain separate bankruptcy counsel to do so, as such matters arise.

In the event the Trustee requests that BSF undertake matters beyond the scope of the responsibilities set forth above, and should BSF agree to do so (in its discretion), the Trustee will seek further order of this Court prior to BSF doing so.

**VI.**

**COMPENSATION ARRANGEMENTS**

The Trustee proposes, and by her signature below agrees (subject to this Court's approval), that BSF and KTB&S receive fees and reimbursement of costs as follows:

A.    Expenses in connection with investigation, litigation, settlement, and the like related to the FDIC Tax Litigation and other expenses in connection with the respective employments:    The Estate will pay all actual, out-of-pocket expenses relating thereto, whether directly or as billed by BSF and KTB&S, through the conclusion of the case.

B.    Distributions of Recoveries:    The aggregate amounts of (i) any recovery realized by the Estate in the form of cash, as and when payable, or property (including deferred payments) as and when reduced to cash (including all amounts distributed to the Trustee from the Reserve Account), whether from litigation or settlement involving the FDIC Tax Litigation, and (ii) any additional value made available for the benefit of the Estate through any settlement of the FDIC Tax Litigation with the FDIC (collectively, the "Recoveries") shall be distributed:

    1.    The first dollars from the Recoveries shall reimburse the Estate for all expenses paid by the Estate pursuant to paragraph A. (regarding certain expenses), *i.e.*, all expenses incurred by BSF and KTB&S on or after July 1, 2014;

    2.    If any funds remain in the Recoveries after payment of all expenses per the preceding paragraph B.1. (such amounts, the "Net Recoveries"), then:

        a. If the FDIC Tax Litigation settles after the filing of this Application but before Court approval of this Application, then 5% of the Net Recoveries will be paid as a contingency fee to BSF and KTB&S (with 3% payable to BSF and 2% payable to KTB&S). The balance (95%) shall remain in the Estate to be distributed as required by applicable law.

13

b. If the FDIC Tax Litigation settles within 9 months of this Court's approval of this Application, then 20% of the Net Recoveries will be paid as a contingency fee to BSF and KTB&S (with 12% payable to BSF and 8% payable to KTB&S). The balance (80%) shall remain in the Estate to be distributed as required by applicable law.

c. If the FDIC Tax Litigation settles or is finally adjudicated after the 9-month period described in paragraph B.2.b., then 25% of the Net Recoveries will be paid as a contingency fee to BSF and KTB&S (with 15% payable to BSF and 10% payable to KTB&S). The balance (75%) shall remain in the Estate to be distributed as required by applicable law.

By this Application, the Trustee seeks entry of an order pursuant to Bankruptcy section 328(a) approving her employment and compensation of BSF and KTB&S as co-counsel to pursue the FDIC Tax Litigation (and as necessary, the Collateral Matters), as specifically set forth in this Application. Bankruptcy Code section 328(a) provides that a trustee may employ attorneys "on any reasonable terms and conditions of employment, including . . . on a contingent fee basis." 11 U.S.C. § 328(a). Contingent fee compensation arrangements based on a percentage of a litigation recovery have become commonplace in bankruptcy cases. *See, e.g., Riker, Danzig, Scherer, Hyland & Perretti v. Official Comm. of Unsecured Creditors (In re Smart World Techs., LLC)*, 552 F.3d 228, 234 (2d Cir. 2009); *Peele v. Cunningham (In re Texas Sec., Inc.)*, 218 F.3d 443, 446 (5th Cir. 2000); *In re Lytton's*, 832 F.2d 395, 400 (7th Cir. 1987); *Paloian v. Grupo Serla S.A. de C.V. (In re GGSI Liquidation, Inc.)*, 355 B.R. 691, 704 (Bankr. N.D. Ill. 2006); *In re Merry-Go-Round Enters., Inc.*, 244 B.R. 327, 345 (Bankr. D. Md. 2000); *In re Malcon Dev., Inc.*, 138 B.R. 677, 683 (Bankr. N.D.N.Y. 1992); *In re Yablon*, 136 B.R. 88, 92-93 (Bankr. S.D.N.Y. 1992); *In re Knudsen Bros. Dairy, Inc.*, 24 B.R. 418, 420 (Bankr. D. Conn. 1982); *In re James Calvin Belk Constr. Co., Inc.*, 11 B.R. 56, 60 (Bankr. N.D. Miss. 1981).

Courts approve contingency fee arrangements based on a percentage of the recoveries if such percentage is reasonable under the circumstances. *See In re James Calvin Belk Constr. Co.*, 11 B.R. 56, 60-61 (Bankr. N.D. Miss. 1981). After all, contingent fee arrangements "are time honored, and necessary to provide meaningful access to the courts

14

1  for those . . . who cannot afford to pay an attorney on an hourly basis." *In re Sportsman's*

2  *Link, Inc.*, Case No. 07–10454, 2012 WL 2998410, at *6 (Bankr. S.D. Ga. July 17, 2012).

3  Such arrangements "are used in a wide variety of legal settings . . ., not only as an efficient

4  risk-shifting and litigation-financing device but also as a method of more closely aligning the

5  lawyer's interests with those of his client by giving him a stake in a successful outcome."

6  *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (Posner, J.).  Because contingent fees

7  "shift part of the risk of loss from client to lawyer, contingent-fee contracts usually yield a

8  larger fee in a successful case than an hourly fee would." *Id.*[4]

9        Courts in the Ninth Circuit and across the country commonly approve contingent fee

10  rates under Bankruptcy Code section 328(a) that are in line with the national averages, which

11  are well above what the Trustee proposes to pay BSF and KTB&S. *E.g.*, *In re Reimers*, 972

12  F.2d 1127, 1129 (9th Cir. 1992) (reversing and remanding district court's affirmance of the

13  bankruptcy court's approval of a fee less than provided in counsel's preapproved 40%

14  contingency fee agreement); *In re Merry-Go-Round Enters., Inc.*, 244 B.R. at 345 (approving

15  40% ($71.2 million) contingent fee for special litigation counsel under section 328); *Waslow*

16  *v. Grant Thorton LLP (In re Jack Greenberg, Inc.)*, 240 B.R. 486, 516 (Bankr. E.D. Pa.

17  1999) (order allowed special litigation counsel 30% contingency fee); *In re Malcon*

18  *Developers*, 138 B.R. at 681-82 (approving 33% contingent fee arrangement where attorney

19  had assumed risk of less than full payment, if not nonpayment, for his services); *In re*

20  *Scranton Elec. Constr. Co.*, 105 B.R. 1 (Bankr. M.D. Pa. 1989) (approving 30%

21

22  [4] Studies have shown that the conventional flat contingent fee rate in the United States is one-third of the recovery. About two-thirds of the contingent fee cases (excluding those governed by special regulation)

23  involve a fixed percentage ("flat fee"); in 88% of these cases, the contingent fee is 33% of the recovery. Herbert M. Kritzer, *Seven Dogged Myths Concerning Contingency Fees*, 80 Wash. U. L. Q. 739, 759

24  (2002). In cases employing a variable percentage rather than a flat fee, these studies show that attorneys commonly charge 25% of the recovery if the case does not go to trial or does not involve substantial trial

25  preparations; 33% if the case goes beyond this point and ends at the trial-court decision; and 40% to 50% if the case results in an appeal. *See* Herbert M. Kritzer, *Risks, Reputations, and Rewards: Contingency*

26  *Fee Legal Practice in the United States* 42-44 (Stanford Univ. Press 2004); Lester Brickman, *Effective Hourly Rates of Contingency-Fee Lawyers: Competing Data and Noncompetitive Fees*, 81 Wash. U. L.

27  Q. 653, 657 (2003); Nora Freeman Engstrom, *Sunlight and Settlement Mills*, 86 N.Y.U. L. Rev. 805, 845 (2011).

28

  Application for Employment of KTB&S
and Amendment of Order on Employment of BSF

1  contingency-fee arrangement for special counsel where continued prosecution of an action
2  was in the best interest of the estate and the counsel was uniquely familiar with the action
3  and in the best position to bring it to the quickest and best resolution for the estate). *See also*
4  *Gibbs & Bruns LLP v. Coho Energy, Inc. (In re Coho Energy Inc.)*, 395 F.3d 198, 201 (5th
5  Cir. 2004) (referring to bankruptcy court's approval of contingency fee of 30% under section
6  328); *In re Texas Securities, Inc.*, 218 F.3d 443, 444 (5th Cir. 2000) (same at 40%); *In re*
7  *Flanagan*, 387 B.R. 360, 361 (D. Conn. 2008) (same at range of 33% to 40%); *Broyles v.*
8  *Tudor, Bailey & Co.*, Case No. 3:98–CV–0266, 2000 WL 1206610, at *1 (N.D. Tex. Aug.
9  24, 2000) (same at 40%).

10        The Trustee has concluded that the proposed compensation and other terms of
11  engagement for BSF and KTB&S are reasonable, appropriate, and in the best interests of the
12  Estate and its creditors based on a number of considerations. This is a unique case, involving
13  not only a bankruptcy proceeding for the Debtor but also a separate proceeding, conducted
14  under a different federal statute, for the Bank. Numerous interactions must occur between
15  the Trustee's and the FDIC's representatives, and complex issues must be identified,
16  analyzed, and litigated. The issues implicate bankruptcy, banking, tax, and other areas.
17  Further complicating these matters is the fact that no employee remains at the Debtor to
18  assist the Trustee in understanding the facts. In addition, many issues have been difficult to
19  resolve consensually with the FDIC, and from experience, the Trustee and her counsel
20  expect the parties to continue to have difficulty in reaching agreement consensually on many
21  issues.

22        In view of the difficulty of just obtaining access to documents and rudimentary
23  information thus far, the Trustee and her counsel expect litigation against the FDIC to be
24  protracted. Indeed, based on the FDIC's behavior in other cases, it is reasonable to anticipate
25  that the FDIC will likely appeal any judgment in the FDIC Tax Litigation to the Ninth
26  Circuit Court of Appeals. As such, the Trustee and her counsel estimate that it could be
27  years rather than months before the FDIC Tax Litigation is resolved.

28        The Trustee and her counsel believe that the Estate's claims to ownership of the tax

Application for Employment of KTB&S
and Amendment of Order on Employment of BSF

1   refunds are worth millions of dollars, but the risk inherent in the associated litigation makes
2   an estimate of the expected results difficult at best.  What is clear to the Trustee is that if the
3   Trustee were required to seek to retain counsel employed on a traditional hourly fee basis,
4   the Estate would not be able to pursue such claims as there are insufficient resources to do
5   so.  With the contingency fee proposed, BSF and KTB&S assume the burdens of pursuing
6   the FDIC Tax Litigation in the event they are unsuccessful.  Based on the information in the
7   Application and the reputations and experience of the attorneys proposed to handle these
8   matters, the Trustee believes that BSF and KTB&S have the expertise and experience
9   necessary to handle the many complex and contentious issues that are likely to arise in the
10  FDIC Tax Litigation and to maximize Recoveries for the Estate.

11      The fee arrangements also reflect that both BSF and KTB&S will have lost
12  opportunity costs due to the very significant time and resources that each anticipate needing
13  to devote to the FDIC Tax Litigation to the preclusion of other engagements, which involve
14  far less risk of non-payment.  Based on the foregoing, the Trustee has concluded that the
15  proposed contingency fee arrangements are reasonable, appropriate, and in the best interests
16  of the Estate and its creditors.

17      Except as otherwise ordered by the Court, BSF and KTB&S will file one or more fee
18  applications seeking Court authority to receive reimbursement of expenses from the Estate
19  consistent with the Application and any orders of the Court and applicable procedures
20  established by the U.S. Trustee.  To the extent any expenses paid to BSF or KTB&S are
21  disallowed by this Court, each of BSF and KTB&S understands that such disallowed
22  amounts may be ordered disgorged by BSF or KTB&S (as the case may be) and returned to
23  the Estate.

24      Following the conclusion of the FDIC Tax Litigation, the Trustee proposes that each
25  of BSF and KTB&S will file a final application requesting approval and payment of its
26  contingent fees and accounting for all of its expense reimbursements; *provided, however,*
27  that pursuant to the order requested by this Application, the Court's review of each such
28  application will be limited to the narrow standard set forth in the last sentence of Bankruptcy

17

Application for Employment of KTB&S
and Amendment of Order on Employment of BSF

1  Code section 328(a). *See* 11 U.S.C. § 328(a) (court may allow different compensation from

2  the terms and conditions previously approved, only "if such terms and conditions prove to

3  have been improvident in light of developments not capable of being anticipated at the time

4  of the fixing of such terms and conditions"). Any contingency fee based on Net Recoveries

5  to the Estate will be due and payable promptly following the Court's approval of an

6  application for such contingency compensation.

7  ### VII.

8  ### COMPENSATION RECEIVED TO DATE

9  BSF has received payment for its services pursuant to its first, second, third, and

10  fourth interim fee applications [Docket Nos. 43, 51, 66, 95] and orders of this Court,

11  respectively granting same [Docket Nos. 48, 57, 77, 109]. An Order granting BSF's fifth

12  interim fee application covering services from June 1, 2013 through June 30, 2014, was

13  issued on August 12, 2014, allowing $114,828 in fees and $1,354.35 in expenses.

14  Otherwise, no payments have been made or promised to BSF by the Trustee for services

15  rendered in any capacity whatsoever in connection with the Debtor's chapter 7 case.

16  No payments have been made or promised to KTB&S by the Trustee for services

17  rendered in any capacity whatsoever in connection with the Debtor's chapter 7 case.

18  There is no agreement or understanding between BSF or any other entity for the

19  sharing of compensation to be received for its services rendered in or in connection with the

20  Estate in conjunction with the Bankruptcy Code and orders of this Court.

21  There is no agreement or understanding between KTB&S or any other entity for the

22  sharing of compensation to be received for its services rendered in or in connection with the

23  Estate in conjunction with the Bankruptcy Code and orders of this Court.

24  ### VIII.

25  ### NO ADVERSE INTEREST/DISINTERESTEDNESS

26  The Trustee understands that, to the best of BSF's knowledge (based upon the

27  accompanying Kosnitzky Declaration), BSF and all of the attorneys comprising or employed

28  by it are disinterested persons who do not hold or represent an interest adverse to the Estate,

Application for Employment of KTB&S
and Amendment of Order on Employment of BSF

1    and, except as provided in the Kosnitzky Declaration, do not have any connection, within the

2    meaning of Bankruptcy Rule 2014, with the Trustee, the Debtor, or any other party in

3    interest in this case or with their respective attorneys or accountants, or with any judge of the

4    United States Bankruptcy Court for the Central District of California, the United States

5    Trustee for such District or any person employed in the Office of the United States Trustee

6    for such District.

7        The Trustee understands that, to the best of KTB&S's knowledge (based upon the

8    Bussel Declaration), KTB&S and all of the attorneys comprising or employed by it are

9    disinterested persons who do not hold or represent an interest adverse to the Estate in

10    connection with the FDIC Tax Litigation or otherwise, and, except as set forth in the Bussel

11    Declaration, do not have any connection, within the meaning of Bankruptcy Rule 2014, with

12    the Trustee, the Debtor, or any other party in interest in this case or with their respective

13    attorneys or accountants, or with any judge of the United States Bankruptcy Court for the

14    Central District of California, the United States Trustee for such District, or any person

15    employed in the Office of the United States Trustee for such District.

16        Because of the specialized nature of the practices of BSF and KTB&S, from time to

17    time, each of BSF and KTB&S may concurrently represent one client in a particular case and

18    the adversary of that client (or a professional employed to represent that adversary) in an

19    unrelated case.  Thus, while representing a debtor or that debtor's bankruptcy trustee, BSF or

20    KTB&S may represent a creditor of the debtor in that creditor's capacity either as a debtor or

21    as a creditor of an entity that is unrelated to the debtor.  The Trustee does not consider such

22    concurrent representation, in unrelated matters, of the Trustee by BSF and/or KTB&S and

23    any adversary to be inappropriate and therefore waives any objections to any such present or

24    future concurrent representation.

25                                                **IX.**

26                                         **CONCLUSION**

27        **THEREFORE**, the Trustee hereby requests that the Court enter an order (1)

28    authorizing the employment of KTB&S as special litigation co-counsel to the Trustee

19

1   effective July 1, 2014 for the purposes and pursuant to the terms and conditions set forth in

2   the Application, (2) amending the BSF Employment Order effective July 1, 2014 in

3   accordance with the terms and conditions set forth in the Application, (3) approving the

4   terms and conditions for compensation of BSF and KTB&S, pursuant to Bankruptcy Code

5   section 328(a) in accordance with the contingent fee compensation arrangements set forth

6   herein, (4) limiting the Court's review of any contingency fees earned by BSF or KTB&S to

7   the narrow standards set forth in Bankruptcy Code section 328(a), and (5) granting the

8   Trustee, BSF, and KTB&S any other relief that the Court deems just and appropriate.

9

10

11

12

13   DATED: _____, 2014          _____

14                      HELEN R. FRAZER
                     Solely in Her Capacity as Chapter 7 Trustee for the
                     Estate of Temecula Valley Bancorp, Inc.

15

16

17   Presented by:

18

19

20   MICHAEL KOSNITZKY, an Attorney with
    BOIES, SCHILLER & FLEXNER LLP
    Counsel for Helen R. Frazer, in her capacity
21   as Chapter 7 Trustee

22

23

24

25

26

27

28

                    20                Application for Employment of KTB&S
                               and Amendment of Order on Employment of BSF

1  effective July 1, 2014 for the purposes and pursuant to the terms and conditions set forth in

2  the Application, (2) amending the BSF Employment Order effective July 1, 2014 in

3  accordance with the terms and conditions set forth in the Application, (3) approving the

4  terms and conditions for compensation of BSF and KTB&S, pursuant to Bankruptcy Code

5  section 328(a) in accordance with the contingent fee compensation arrangements set forth

6  herein, (4) limiting the Court's review of any contingency fees earned by BSF or KTB&S to

7  the narrow standards set forth in Bankruptcy Code section 328(a), and (5) granting the

8  Trustee, BSF, and KTB&S any other relief that the Court deems just and appropriate.

9

10

11

12

13  DATED: _____, 2014

                            _____

14                              HELEN R. FRAZER
                            Solely in Her Capacity as Chapter 7 Trustee for the

15                              Estate of Temecula Valley Bancorp, Inc.

16

17  Presented by:

18

19

20

21  _____

22  MICHAEL KOSNITZKY, an Attorney with
BOIES, SCHILLER & FLEXNER LLP

23  Counsel for Helen R. Frazer, in her capacity
as Chapter 7 Trustee

24

25

26

27

28

                            Application for Employment of KTB&S
                      and Amendment of Order on Employment of BSF

### DECLARATION OF DANIEL J. BUSSEL

I, Daniel J. Bussel, hereby declare that the following is true to the best of my knowledge, information, and belief:

1.      I am a partner in the firm of Klee, Tuchin, Bogdanoff & Stern LLP ("KTB&S" or the "Firm"), which maintains offices for the practice of law at 1999 Avenue of the Stars, 39th Floor, Los Angeles, CA 90067.  I am admitted, practicing, and a member in good standing of the bar of the State of California.

2.      I submit this declaration in support of the employment application (the "Application"),[5] filed contemporaneously herewith by Helen R. Frazer, chapter 7 trustee (the "Trustee") for the estate of Temecula Valley Bancorp, Inc. (the "Debtor" and its bankruptcy estate, the "Estate"), which seeks to, among other things, obtain approval of KTB&S's engagement as special counsel for the Trustee.

3.      Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein and, if called as a witness, would testify competently thereto.[6]  To the extent that any information disclosed herein requires amendment or modification upon KTB&S's completion of further analysis or as additional information becomes available to KTB&S, a supplemental declaration will be submitted to this Court.

4.      The Trustee has selected KTB&S as her proposed special litigation counsel, to render such ordinary and necessary legal services as may be required with respect to litigation between the Trustee and the Federal Deposit Insurance Corporation arising in or related to the Debtor's bankruptcy case (the "Bankruptcy Case") and concerning approximately $34 million of tax refunds, including any related appeals (the "FDIC Tax Litigation").  KTB&S has accepted such an engagement on the terms and conditions set forth in the Retention Agreement that is attached to the Application as its Exhibit 2.

---

[5]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to those terms in the Application.

[6]   Certain of the disclosures herein relate to matters within the knowledge of other attorneys at KTB&S and are based on information provided by them and by KTB&S's administrative staff.

Application for Employment of KTB&S
and Amendment of Order on Employment of BSF

## DISINTERESTEDNESS OF PROFESSIONALS

5.      To the best of my knowledge, and except as otherwise set forth herein, the partners in, counsel to, and associates of KTB&S, (a) do not have any connection with any of the Trustee, the Debtor, or any other party in interest in the Bankruptcy Case or with their respective attorneys or accountants, or with any judge of the United States Bankruptcy Court for the Central District of California, the United States Trustee for such District, or any person employed in the Office of the United States Trustee for such District; (b) are "disinterested persons," as that term is defined in Bankruptcy Code section 101(14); and (c) do not hold or represent any interest adverse to the Estate.

6.      In connection with this proposed retention, KTB&S conducted a search with respect to its connections to certain categories of entities or individuals, as ascertained from a review of available documents.  A list of those identified parties is available upon request.[7]

7.      KTB&S utilized two procedures to determine its relationships, if any, to the identified parties.  First, KTB&S used computer software to search the "case conflict memoranda" that it has prepared and maintained over the years in order to identify potential relationships.  This search identified potentially relevant case conflict memoranda, which were thereafter reviewed by KTB&S attorneys.  Second, KTB&S also circulated the list of identified parties by electronic mail to all attorneys with the Firm, with a request that each attorney review the list and advise as to any relationships that may have escaped scrutiny utilizing the software-based search on which the Firm principally relies.

8.      KTB&S's search with respect to the identified parties has revealed that the Firm's connections, currently and in the past, are as follows:[8]

(a)      Members of KTB&S have professional, business, social, and family

[7]  KTB&S will continue to review its records with respect to other parties in interest and shall promptly notify this Court by a supplemental declaration if any such connection is discovered.

[8]  The identification and classification herein of various entities or individuals as falling within certain categories is not intended and should not be deemed to be an admission of the legal rights or status of any particular individual or entity.

Application for Employment of KTB&S
and Amendment of Order on Employment of BSF

1   relationships with firms and professionals that may be involved in the
2   Bankruptcy Case or the FDIC Tax Litigation. Firms and professionals
    involved in these cases or the matters for which KTB&S is to be engaged may
3   have referred (and may in the future refer) work to KTB&S (and vice versa),
    may have been retained or represented by KTB&S, or may have been jointly
4   retained with KTB&S in other matters. KTB&S has strict policies against
5   disclosing confidential information to anyone outside of KTB&S.

6   (b)    KTB&S represents and has represented, in unrelated matters, groups of
7   former partners and shareholders, but not the partners and shareholders
    individually, in connection with their prior affiliation with law firms that have
8   ceased operation, filed for bankruptcy, and/or liquidated. Certain of the
9   members of those groups may now represent parties in these cases or may
    work for law firms that are involved in in the Bankruptcy Case or the FDIC
10  Tax Litigation.

11  (c)    Several partners with KTB&S are or have been involved in Minimum
12  Continuing Legal Education and other educational activities with the United
    States Trustee for the Central District of California (Region 16) and members
13  of his office, and certain bankruptcy judges in the Central District of
    California. Members of KTB&S have served, and currently serve, on the
14  Ninth Circuit Judicial Conference and have served as members of the Ninth
15  Circuit Judicial Merit Screening Panels.

16  (d)    Over the years, KTB&S has represented and currently represents in
17  unrelated cases and matters debtor entities, representatives of bankruptcy
    estates (e.g., chapter 7 trustees), or other analogous entities such as liquidating
18  or litigation trusts in which parties included among the parties in interest in the
19  Bankruptcy Case and/or their affiliates have economic interests.

20  (e)    Since the formation of KTB&S approximately 15 years ago, and over
    the course of the lengthy careers of the lawyers comprising KTB&S, KTB&S
21  and its attorneys have represented, now represent, and likely will represent in
22  the future parties adverse to many of the creditors, professionals, equity
    holders, and other parties in interest in the Bankruptcy Case or the FDIC Tax
23  Litigation. Without limiting the generality of the foregoing, KTB&S currently
    represents chapter 7 trustees or other parties in other bankruptcy cases that are
24  actively litigating with the FDIC regarding issues that are substantially similar
25  to the issues that are likely to be raised in the FDIC Tax Litigation.

26  (f)    Maria Sountas-Argiropoulos, prior to joining KTB&S as a partner,
    represented the following parties and/or their affiliates in unrelated matters: (i)
27  Wilmington Trust and (ii) US Bank National Association. KTB&S does not
28  currently represent any of the parties in this paragraph and under no

23

circumstances will KTB&S represent these parties in connection with the Bankruptcy Case or the FDIC Tax Litigation.  KTB&S is free to be adverse to the parties identified in this paragraph.

(g)    From time to time, KTB&S partners, associates, and employees owe income taxes to the California Franchise Tax Board.

(h)    From time to time, KTB&S partners, associates, and employees (i) have personal banking relationships with certain of the parties in interest in the Bankruptcy Case (including, without limitation, the maintenance of deposit accounts at depository institutions which are insured by the Federal Deposit Insurance Corporation); (ii) personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and/or other types of investment funds that may be administered by certain of the parties in interest in the Bankruptcy Case or acquire a debt or equity security of certain of the parties in interest in the Bankruptcy Case; and/or (iii) personally (or through family trusts or family partnerships) invest in the publicly traded stock of certain of the parties in interest in the Bankruptcy Case, specifically including AT&T and U.S. Bank National Association.

(i)    From time to time, KTB&S and KTB&S partners, associates, and employees enter into ordinary customer relationships (e.g., a cable or cell phone service contract) with, or purchase goods or services from, certain of the parties in interest in the Bankruptcy Case, specifically including AT&T.

(j)    During the period of 2000-2001, the Honorable Deborah J. Saltzman practiced law as an associate attorney at KTB&S.  During the period of September 2005 through and including September 2010, KTB&S partner Whitman L. Holt practiced law as an associate attorney at Stutman, Treister & Glatt P.C. ("ST&G").  During the course of Mr. Holt's employment at ST&G, the Honorable Scott H. Yun practiced law as a shareholder attorney at ST&G.

9.    I do not believe that any such connections between KTB&S and the parties identified above results in KTB&S holding or representing an interest that is adverse to the Estate.

10.    To the best of my knowledge, neither KTB&S nor any attorney or employee at the Firm is or was a creditor, an equity security holder, or an insider of the Debtor.

11.    To the best of my knowledge, neither KTB&S nor any attorney or employee at the Firm is or has served as an officer, director, or employee of the Debtor.

24

Application for Employment of KTB&S
and Amendment of Order on Employment of BSF

12.     To the best of my knowledge, KTB&S does not have an interest materially adverse to the interests of the Estate or of any class of creditors or equity security holders of the Debtor, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor or for any other reason.

13.     In view of the foregoing, to the best of my knowledge, (i) KTB&S is a "disinterested person" within the meaning of Bankruptcy Code section 101(14), and does not hold or represent an interest adverse to the Estate in the FDIC Tax Litigation or otherwise; and (ii) KTB&S has no connection to the Debtor, its creditors, or other parties in interest, except as may be disclosed herein.

PROFESSIONAL COMPENSATION

14.     The legal services KTB&S has agreed to provide, subject to this Court's approval, are detailed in the accompanying Application and the same is incorporated herein by reference.

15.     Subject to this Court's approval and the terms and conditions of the KTB&S Retention Agreement, the Trustee has agreed that compensation will be payable to KTB&S on a purely contingency fee basis as follows:

A.     Expenses in connection with investigation, litigation, settlement, and the like related to the FDIC Tax Litigation and other expenses in connection with the respective employments:    The Estate will pay all actual, out-of-pocket expenses relating thereto, whether directly or as billed by BSF and KTB&S, through the conclusion of the case.

B.     Distributions of Recoveries:    The aggregate amounts of (i) any recovery realized by the Estate in the form of cash, as and when payable, or property (including deferred payments) as and when reduced to cash (including all amounts distributed to the Trustee from the Reserve Account), whether from litigation or settlement involving the FDIC Tax Litigation, and (ii) any additional value made available for the benefit of the Estate through any settlement of the FDIC Tax Litigation with the FDIC (collectively, the "Recoveries") shall be distributed:

25

1.    The first dollars from the Recoveries shall reimburse the Estate for all expenses paid by the Estate pursuant to paragraph A. (regarding certain expenses), *i.e.*, all expenses incurred by BSF and KTB&S on or after July 1, 2014;

2.    If any funds remain in the Recoveries after payment of all expenses per the preceding paragraph B.1. (such amounts, the "Net Recoveries"), then:

a.    If the FDIC Tax Litigation settles after the filing of this Application but before Court approval of this Application, then 5% of the Net Recoveries will be paid as a contingency fee to BSF and KTB&S (with 3% payable to BSF and 2% payable to KTB&S). The balance (95%) shall remain in the Estate to be distributed as required by applicable law.

b.    If the FDIC Tax Litigation settles within 9 months of this Court's approval of this Application, then 20% of the Net Recoveries will be paid as a contingency fee to BSF and KTB&S (with 12% payable to BSF and 8% payable to KTB&S). The balance (80%) shall remain in the Estate to be distributed as required by applicable law.

c.    If the FDIC Tax Litigation settles or is finally adjudicated after the 9-month period described in paragraph B.2.b., then 25% of the Net Recoveries will be paid as a contingency fee to BSF and KTB&S (with 15% payable to BSF and 10% payable to KTB&S). The balance (75%) shall remain in the Estate to be distributed as required by applicable law.

16.    KTB&S will file a final application requesting approval of its contingent fees and accounting for all of its expense reimbursements; *provided, however*, that pursuant to the relief requested by the Application, I believe the Court's review of such application should be limited to the narrow standard set forth in the last sentence of Bankruptcy Code section 328(a).

17.    In addition to the contingency compensation set forth above, it is KTB&S's practice to charge its clients for expenses incurred in connection with their cases. The expenses charged to clients include, among other things, charges for messenger services, air

Application for Employment of KTB&S
and Amendment of Order on Employment of BSF

couriers, photocopying, court fees, travel expenses, postage for large mailings, long-distance telephone, computerized legal research facilities, investigative searches, and other charges customarily invoiced by law firms in addition to fees for legal services. Third party expenses incurred by KTB&S are charged at their actual cost to KTB&S without surcharge. KTB&S does not charge its clients for word processing or secretarial overtime.

18.    Except as otherwise ordered by the Court, KTB&S will file one or more fee applications seeking Court authority to receive reimbursement of actual, out-of-pocket expenses from the Estate consistent with the Application and any orders of the Court and applicable procedures established by the U.S. Trustee. To the extent any expenses paid to KTB&S are disallowed by this Court, KTB&S understands that such disallowed amounts may be ordered disgorged by KTB&S and returned to the Estate.

19.    Other than as set forth above, no arrangement is proposed between the Trustee and KTB&S for compensation to be paid in connection with the Bankruptcy Case or the FDIC Tax Litigation.

20.    Except for such sharing arrangements among KTB&S, and its respective partners, KTB&S has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under Bankruptcy Code section 504(b)(1).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 12 day of August, 2014, at Los Angeles, California.

Daniel J. Bussel

27

Application for Employment of KTB&S
and Amendment of Order on Employment of BSF

## DECLARATION OF MICHAEL KOSNITZKY

I, Michael Kosnitzky, hereby declare under penalty of perjury that:

1.     I am over eighteen years of age and have personal knowledge of the facts set forth herein, and if called as a witness, would testify competently with respect thereto from my own personal knowledge except as otherwise stated.

2.     I am a partner of Boies, Schiller & Flexner LLP ("BSF").

3.     This declaration is submitted pursuant to Bankruptcy Rule 2014(a) in support of the foregoing Application.[9]

4.     The Trustee seeks to amend the BSF Employment Order and modify the terms and conditions of her employment of BSF as her co-counsel.  The current hourly rates of BSF are attached to the Application as Exhibit 3.  In particular, BSF will perform the following services, as and when requested by the Trustee:

    a. Co-counseling with KTB&S to prosecute the FDIC Tax Litigation before this Court.

    b. Co-counseling with KTB&S to represent the Estate in any appeals or other litigation before the District Court, the Ninth Circuit Court of Appeals, or the Supreme Court of the United States in connection with the FDIC Tax Litigation.

    c. Co-Counseling with KTB&S to represent the Estate in litigation in this Court or in appeals before the District Court, the Ninth Circuit Court of Appeals, or the Supreme Court of the United States in connection with Collateral Matters.

    d. Using its best efforts to assist the Trustee in identifying and negotiating litigation financing arrangements with respect to any future litigation that is neither FDIC Tax Litigation nor Collateral Matters, including,

---

[9] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Application.

28

1    without limitation, litigation against the FDIC with respect to claims
2    asserted by the FDIC that are unrelated to the tax refunds.

3        5.    In the event the Trustee requests that BSF undertake matters beyond the scope
4    of the responsibilities set forth above, and should BSF agree to do so (in its discretion), the
5    Trustee will seek further order of this Court prior to BSF doing so.

6        6.    BSF has received payment for its services pursuant to its first, second, third,
7    and fourth interim fee applications [Docket Nos. 43, 51, 66, 95] and orders of this Court,
8    respectively granting same [Docket Nos. 48, 57, 77, 109]. A Order grantung BSF's fifth
9    interim fee application covering services from June 1, 2013 through June 30, 2014, was
10   issued on August 12, 2014, allowing $114,828 in fees and $1,354.35 in expenses.
11   Otherwise, no payments have been made or promised to BSF by the Trustee for services
12   rendered in any capacity whatsoever in connection with the Debtor's chapter 7 case.

13       7.    The accompanying Application accurately sets forth the terms upon which BSF
14   has agreed to represent the Trustee effective July 1, 2014.

15       8.    Except as otherwise ordered by the Court, BSF will file one or more fee
16   applications seeking Court authority to receive compensation and reimbursement of expenses
17   from the Estate consistent with the Application and any orders of the Court and applicable
18   procedures established by the U.S. Trustee. To the extent any fees or expenses paid to BSF
19   are disallowed by this Court, BSF understands that such disallowed amounts may be ordered
20   disgorged by BSF and returned to the Estate.

21       9.    BSF will file a final application requesting approval of its contingent fees and
22   accounting for all of its expense reimbursements; provided, however, that pursuant to the
23   order requested by the Application, I believe the Court's review of such application should
24   be limited to the narrow standard set forth in the last sentence of Bankruptcy Code section
25   328(a).

26       10.    I believe that BSF and all of the attorneys comprising or employed by it are
27   disinterested persons who do not hold or represent an interest adverse to the estate and,
28   except as set forth below, do not have any connection, within the meaning of Bankruptcy

29

Application for Employment of KTB&S
and Amendment of Order on Employment of BSF

1    Rule 2014, either with the Trustee, the Debtor, its creditors, or any other party in interest in

2    this case or with their respective attorneys or accountants, or with any judge of the United

3    States Bankruptcy Court for the Central District of California, the United States Trustee for

4    such District, or any person employed in the Office of the United States Trustee for such

5    District.

    a.  Since the formation of BSF approximately 17 years ago, and over
6       the course of the lengthy careers of the lawyers comprising BSF,
7       BSF and its attorneys have represented, now represent, and likely
        will represent in the future parties adverse to many of the
8       creditors, professionals, equity holders, and other parties in
9       interest in the Bankruptcy Case or the FDIC Tax Litigation.

10   b.  From time to time, BSF partners, associates, and employees (i)
        have personal banking relationships with certain of the parties in
11      interest in the Bankruptcy Case (including, without limitation,
        the maintenance of deposit accounts at depository institutions
12      which are insured by the Federal Deposit Insurance Corporation);
13      (ii) personally invest in mutual funds, retirement funds, private
        equity funds, venture capital funds, hedge funds, and/or other
14      types of investment funds that may be administered by certain of
        the parties in interest in the Bankruptcy Case or acquire a debt or
15      equity security of certain of the parties in interest in the
16      Bankruptcy Case; and/or (iii) personally (or through family trusts
        or family partnerships) invest in the publicly traded stock of
17      certain of the parties in interest in the Bankruptcy Case.
18

19   c.  From time to time, BSF and BSF partners, associates, and
        employees enter into ordinary customer relationships (e.g., a
20      cable or cell phone service contract) with, or purchase goods or
        services from, certain of the parties in interest in the Bankruptcy
21      Case, specifically including AT&T.
22

23   11.    I do not believe that any such connections between BSF and the parties

24   identified above results in BSF holding or representing an interest that is adverse to the

25   Estate.

26   12.    To the best of my knowledge, neither BSF nor any attorney or employee at the

27   Firm is or was a creditor, an equity security holder, or an insider of the Debtor.

28   13.    To the best of my knowledge, neither BSF nor any attorney or employee at the

Application for Employment of KTB&S
and Amendment of Order on Employment of BSF

1    Firm is or has served as an officer, director, or employee of the Debtor.

2        14.    To the best of my knowledge, BSF does not have an interest materially adverse

3    to the interests of the Estate or of any class of creditors or equity security holders of the

4    Debtor, by reason of any direct or indirect relationship to, connection with, or interest in the

5    Debtor or for any other reason.

6        15.    In view of the foregoing, to the best of my knowledge, (i) BSF is a

7    "disinterested person" within the meaning of Bankruptcy Code section 101(14), and does not

8    hold or represent an interest adverse to the Estate in the FDIC Tax Litigation or otherwise;

9    and (ii) BSF has no connection to the Debtor, its creditors, or other parties in interest, except

10   as may be disclosed herein.

11       16.    There is no agreement or understanding between BSF or any other entity for

12   the sharing of compensation to be received for its services rendered in or in connection with

13   the Estate in conjunction with the Bankruptcy Code and orders of this Court.

14       17.    I believe that BSF is competent to serve the interests of the Estate as the

15   Trustee's co-counsel for the purposes described in the Application and the BSF Agreement.

16       18.    The representations contained in the Application accurately summarize the

17   agreement between the Trustee and BSF and the basic reasons for that agreement.

18       I declare under penalty of perjury that the foregoing is true and correct to the best of

19   my knowledge and belief.

20       Executed on August 12, 2014 at Miami, Florida.

21

22

23   _____

24   Michael Kosnitzky

25

26

27

28

Application for Employment of KTB&S
and Amendment of Order on Employment of BSF

1

## DECLARATION OF HELEN R. FRAZER

2      I, Helen R. Frazer, do hereby declare as follows:

3      1.          I am over eighteen years of age and have personal knowledge of the

4  facts set forth herein, and if called as a witness, would testify competently with respect

5  thereto from my own personal knowledge except as otherwise stated.

6      2.          I am the Chapter 7 Trustee in the above-captioned chapter 7 case of

7  Temecula Valley Bancorp, Inc. (the "Debtor").

8      3.          This declaration is submitted in support of the foregoing Application.[10]

9      4.          The handling of this case has required and, I believe, likely will

10  continue to require a substantial time commitment from the Estate professionals and me

11  personally.  After being appointed as trustee, with the assistance of my professionals, I

12  immediately began my investigation of the events and transactions that culminated in this

13  chapter 7 bankruptcy case.  Shortly after my appointment as interim trustee, I learned that the

14  FDIC is in possession of substantially all of the Debtor's books and records because they

15  were maintained at the corporate headquarters of the Bank.  The accompanying Application

16  accurately summarizes our continuing efforts to obtain documents, interview witnesses and

17  reconstruct the circumstances leading to this chapter 7 case.

18      5.          On the Petition Date, the Debtor's chapter 7 estate ("Estate") had

19  approximately $1,269,336 in cash, and as of July 16, 2014, the Estate had approximately

20  $421,575.83 in cash.  The Estate already has expended approximately $850,000 for fees and

21  costs of the Trustee's professionals through May 31, 2013, and other costs of administration

22  to date, including fees of the Trustee.  On July 16, 2014, BSF filed its fifth interim fee

23  application.  On August 12, 2014, this court issued an Order allowing $114,828 in fees and

24  $1,354.35 in expenses.  The Trustee's other professionals will soon file applications for their

25  fees and expenses for the period from June 1, 2013 through June 30, 2014.

26

27  [10] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the
Application.

28

32

6.          As the cash in the Estate is reduced, the need for continued professional services continues unabated and is likely to increase as we pursue the FDIC Tax Litigation. I expect this to be extraordinarily time consuming and to require a team of dedicated professionals. I do not believe that the Estate has sufficient cash resources to continue to incur the hourly fees that the Estate has been incurring and to fully administer the Estate. I have concluded that it is appropriate, therefore, to arrange for and implement a change in the terms under which the key Estate's professionals are being compensated for services to be rendered.

7.          I have determined, in the exercise of my business judgment, that the prudent course of action is to engage counsel to pursue the FDIC Tax Litigation and the Collateral Matters on a contingent fee basis. BSF, KTB&S and I have agreed to such an arrangement, which is described in detail in the Application and the accompanying declarations and exhibits.

8.          I recognize that, although the potential value of the claims at issue in the FDIC Tax Litigation may be very significant, they may also be valueless. At the same time, I need to ensure that the Estate is adequately represented with respect to all of the matters that need to be handled by counsel, while at the same time ensuring that if litigation is warranted, it is brought and prosecuted vigorously but on terms that will not consume all of the remaining cash in the Estate. I believe that the contingency fee arrangement with BSF and KTB&S set forth in the Application will help me meet my overall objectives of fully administering the Estate for the benefit of creditors, and having a team of dedicated professionals to pursue the interests of the Estate.

Application for Employment of KTB&S
and Amendment of Order on Employment of BSF

9.        I considered several potential law firms, including my current professionals in this case, to undertake the litigation on a contingent fee basis and to handle the many other matters in this case. In the process of determining a reasonable contingency fee arrangement in these circumstances, I considered many factors, which are discussed in detail in the Application, that led me to conclude that retaining the attorneys on the terms proposed in the Application rather than replacing them with other well-qualified counsel who do not have the knowledge gained by these attorneys in this case, will maximize recoveries and minimize costs for the Estate.

10.       I am familiar with the professional credentials, positive reputation, and experience of BSF and KTB&S in general, in similar litigation involving the FDIC, and in this case in particular, and therefore I have concluded that retention of these firms pursuant to the Application is reasonable, appropriate, and in the best interests of the Estate and its creditors.

11.       Since BSF will no longer be engaged as my general bankruptcy counsel, to the extent that issues requiring such services become necessary, I shall determine whether I will handle any future general bankruptcy case matters and/or whether I will retain separate bankruptcy counsel to do so, as such matters arise.

12.       The Application accurately summarize my agreement with BSF and KTB&S and the basic reasons for those agreements.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13 day of August, 2014 at Cerritos, California.

Helen R. Frazer

34

Application for Employment of KTB&S
and Amendment of Order on Employment of BSF

| In re: TEMECULA VALLEY BANCORP, INC. | CHAPTER 7 |
|---|---|
| Debtor(s). | CASE NUMBER 6:09-bk-36828-MH |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 100 S.E. 2nd Street- Suite 2800, Miami, FL 33131

A true and correct copy of the foregoing document described <u>Application Authorizing Employment </u>will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 14, 2014, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

United States Trustee (RS) – ustpregion16.rs.ecf@usdoj.gov
Helen Frazer – hfrazer@aalrr.com
Sameer K. Kapoor – skapoor@kilpatrickstockton.com
Marie C. Pollio – bankruptcy@goodwin.com
Todd Toral – todd.toral@dlapiper.com
Mary Buenaventura – mbuenaventura@aalrr.com
John Clarke - John.Clarke@dlapiper.com
Stacy Chiang - schiang@squarmilner.com

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On August 14, 2014, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Squar, Milner, Peterson, Miranda & Williamson LLP
3655 Nobel Drive, Suite 450
San Diego, CA 92590

LECG, LLC
Attn: Jan Cal, I Esq.
West Valley Business Center
900 West Valley Road, Suite 701
Wayne, PA 19087

Judge Scott H. Yun
United States Bankruptcy Court
3420 Twelfth Street—Suite 345
Riveside, CA 92501-3819

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                                      **F 9013-3.1**

| In re: TEMECULA VALLEY BANCORP, INC. | CHAPTER 7 |
|---|---|
| Debtor(s). | CASE NUMBER 6:09-bk-36828-MH |

☑ Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                   **F 9013-3.1**

| In re: TEMECULA VALLEY BANCORP, INC. | CHAPTER 7 |
|---|---|
| Debtor(s). | CASE NUMBER 6:09-bk-36828-MH |

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 8/14/14 | Jennifer G. Altman | /s/ Jennifer G. Altman |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                    F 9013-3.1

| In re: TEMECULA VALLEY BANCORP, INC. | CHAPTER 7 |
|---|---|
| Debtor(s). | CASE NUMBER 6:09-bk-36828-MH |

## SERVICE LIST

AT&T Corp, c/o James Grudus Esq.
AT&T Services Inc
One AT&T Way Rm 3A218
Bedminster NJ 07921

Baylake Bank
PO Box 9
Sturgeon Bay, WI 54235-0009

COMPUTERSHARE
ACCT TMCV
4229 Collection Ctr Dr.
Chicago, IL 60693

Riverside Division
3420 Twelfth Street
Riverside, CA 92501-3845

FedEx Customer Information Services
3965 Airways Blvd, Module G, 3rd Floor
Memphis, TN 38116

TEMECULA VALLEY BANCORP ENC
28046 El Rio Road, Ste C
Temecula, CA 92590

TEMECULAVALLEYSTAT TRUST II
USBANK NATASS TEE
225 Asylum St
Goodwin Sq
Hartford, CT 05103

TEMECULAVALLEYSTAT TRUST III
WILMINGTON TRUST COMPANY TEE
1100 N Market Street
Wilmington, DE 19801

TEMECULAVALLEYSTAT TRUST IV
WILMINGTON TRUST COMPANY TEE
1100 N Market Street
Wilmington, DE 19801

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                    F 9013-3.1

| In re: TEMECULA VALLEY BANCORP, INC. | CHAPTER 7 |
|---|---|
| Debtor(s). | CASE NUMBER 6:09-bk-36828-MH |

TEMECULAVALLEYSTAT TRUST V
WILMINGTON TRUST COMPANY TEE
1100 N Market Street
Wilmington, DE 19801

TEMECULAVALLEYSTAT TRUST VI
WILMINGTON TRUST COMPANY TEE
1100 N Market Street
Wilmington, DE 19801

Texas Comptroller of Public Accounts
Office of Attorney General
Bankruptcy Collections Division
PO Box 12548
Austin TX 78711-2548

Texas Workforce Commission
Regulatory Integrity Division – SAU
Room 556
101 E. 15th Street
Austin, TX 78778-0001

US BANK NAT ASSO TRUSTEE
1 Federal Street, 3rd Floor
Boston, MA 02110

US Bank National Association
Indenture Trustee and Inst Trustee
Attn James H Byrnes
One Federal Street, Third Floor
Boston MA 02110

Wilmington Trust Company
c/o Todd C. Meyers, Esq.
c/o John C. Mills, Esq.
 Kilpatrick Stockton LLP
1100 Peachtree St. NE
Ste 2800
Atlanta, GA 30309

FRANCHISE TAX BOARD
ATTN: BANKRUPTCY – Section MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                        F 9013-3.1

| In re: TEMECULA VALLEY BANCORP, INC. | CHAPTER 7 |
|---|---|
| Debtor(s). | CASE NUMBER 6:09-bk-36828-MH |

| In re:<br>TEMECULA VALLEY BANCORP, INC. | CHAPTER 7 |
|---|---|
| | CASE NUMBER 6:09-bk-36828-DS |

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Employment Development Dept.
State of California
Benefit Overpayment Collction Section
MIC 91
P.O. Box 826218
Sacramento, CA 94230-6218

The Comptroller of Public Accounts
of the State Bankruptcy & Collection Division
P.O. Box 12548
Austin, TX 78711-2548

Alma Green
43913 Larino Court
Temecula, CA 92592

TEMECULA VALLEY BANCORP INC., a Calif. Corporation
28046 Del Rio Road, Ste C
Temecula, CA 92590

Lawrence C. Meyerson
578 Washington Blvd., Ste 867
Marina Del Rey, CA 90292

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                        F 9013-3.1