## EXHIBIT 2

KLEE, TUCHIN, BOGDANOFF & STERN LLP RETENTION AGREEMENT

(ATTACHED)



Klee,
Tuchin,
Bogdanoff &
Stern
LLP

1999 Avenue of the Stars
Thirty-Ninth Floor
Los Angeles, California 90067

voice: 310-407-4000
fax: 310-407-9090
www.ktbslaw.com

E-mail: dbussel@ktbslaw.com
Direct Dial: 310-407-4015

August 12, 2014

**VIA ELECTRONIC MAIL**

Helen R. Frazer, Trustee
Atkinson, Andelson, Loya, Ruud & Romo
12800 Center Court Drive, Suite 300
Cerritos, CA 90703
hfrazer@aalrr.com

> Re:   Retention Agreement between Helen R. Frazer, solely in her capacity
> as Chapter 7 Trustee, and Klee, Tuchin, Bogdanoff & Stern LLP

Dear Ms. Frazer:

I write to set forth the terms and conditions upon which Klee, Tuchin, Bogdanoff & Stern LLP ("KTB&S") will serve as special litigation counsel to you, Helen R. Frazer, solely in your capacity as Chapter 7 Trustee ("Client"), in respect of the below-described litigation.

Scope of Representation.

This is a limited engagement. KTB&S will act as Client's special litigation counsel, to render such ordinary and necessary legal services as may be required with respect to litigation between Client and the Federal Deposit Insurance Corporation arising in or related to the chapter 7 bankruptcy case styled as *In re Temecula Valley Bancorp Inc.*, Case No. 6:09-bk-36828 (Bankr. C.D. Cal.) (the "Bankruptcy Case") and concerning approximately $34 million of tax refunds, including any related appeals (the "FDIC Tax Litigation").

KTB&S's employment as Client's special litigation counsel does not include the provision of any services outside the areas to which KTB&S limits its practice or beyond the specific scope of this limited engagement. Accordingly, KTB&S's engagement shall not involve the retention of KTB&S as general bankruptcy counsel for Client or the provision of any services regarding the Bankruptcy Case other than with respect to (i) the FDIC Tax Litigation and (ii) the stay, postponement or timing of litigation of any non-tax refund related claims asserted by the FDIC, but not any aspect of the merits of any such claims (the "Collateral Matters"). Other services, including, without limitation, the

Helen R. Frazer, Trustee
August 12, 2014
Page 2

litigation of any claims asserted by the FDIC that do not relate to the disputed tax refunds and are not Collateral Matters, are outside the scope of KTB&S's engagement.

It is a condition to KTB&S's engagement (and continued engagement) that Client have available competent outside counsel to provide advice in all matters outside the scope of KTB&S's engagement, including the continued engagement of (i) general counsel for Client in the Bankruptcy Case and (ii) Boies Schiller & Flexner LLP ("BSF") as co-counsel with KTB&S with respect to the FDIC Tax Litigation and the Collateral Matters.  In the event that BSF resigns, including in connection with the FDIC Tax Litigation, or in the event that Client is unable to obtain representation in connection with any issues that arise in the Bankruptcy Case that are outside the scope of KTB&S's engagement, Client agrees that KTB&S will have no obligation to replace BSF or provide any services beyond the scope contemplated herein and that KTB&S may withdraw immediately from any further representation of Client.  KTB&S has agreed to work cooperatively with BSF and Client's other professionals to integrate any respective work conducted on behalf of Client and work to minimize any duplication of services provided.

KTB&S specializes in the areas of financial reorganization, bankruptcy, general commercial litigation, general corporate law, financings and acquisitions.  We limit our practice (and hence our services here) to those areas.

Financial Arrangements.

Client acknowledges and agrees that KTB&S will be compensated consistent with and pursuant to the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the guidelines established by the Office of the United States Trustee, and the orders of the Bankruptcy Court.

More specifically, Client agrees that, subject to approval of the Bankruptcy Court, KTB&S will be retained as special litigation counsel pursuant to Bankruptcy Code section 328(a) on a contingency fee basis with the following terms and conditions:

1.    The Temecula Valley Bancorp Inc. bankruptcy estate (the "Estate") will pay all actual, out-of-pocket expenses incurred in connection with the investigation, litigation, settlement, and the like related to the FDIC Tax Litigation and other expenses in connection with the respective employments of BSF and KTB&S, whether directly or as billed by BSF and KTB&S, through the conclusion of the case.

2.    Distributions of Recoveries:  The aggregate amounts of (i) any recovery realized by the Estate in the form of cash, as and when payable, or property (including deferred payments) as and when reduced to cash (including all amounts distributed to Client from the reserve account established for deposit of the disputed tax refunds), whether from litigation or settlement involving the FDIC Tax Litigation, and (ii) any additional value made available for the benefit of the Estate through any settlement of

Helen R. Frazer, Trustee
August 12, 2014
Page 3

the FDIC Tax Litigation with the FDIC (collectively, the "Recoveries") shall be distributed:

A.    The first dollars from the Recoveries shall reimburse the Estate for all expenses paid by the Estate pursuant to paragraph 1. (regarding certain expenses), *i.e.*, all expenses incurred by BSF and KTB&S on or after July 1, 2014;

B.    If any funds remain in the Recoveries after payment of all expenses per the preceding paragraph 2.A. (such amounts, the "Net Recoveries"), then:

(i)    If the FDIC Tax Litigation settles after the filing of Client's application to approve the employment of KTBS (the "Application") but before the Bankruptcy Court's approval of the Application, then 5% of the Net Recoveries will be paid as a contingency fee to BSF and KTB&S (with 3% payable to BSF and 2% payable to KTB&S). The balance (95%) shall remain in the Estate to be distributed as required by applicable law.

(ii)    If the FDIC Tax Litigation settles within 9 months of the Bankruptcy Court's approval of the Application, then 20% of the Net Recoveries will be paid as a contingency fee to BSF and KTB&S (with 12% payable to BSF and 8% payable to KTB&S). The balance (80%) shall remain in the Estate to be distributed as required by applicable law.

(iii)    If the FDIC Tax Litigation settles or is finally adjudicated after the 9-month period described in paragraph 2.B.(ii), then 25% of the Net Recoveries will be paid as a contingency fee to BSF and KTB&S (with 15% payable to BSF and 10% payable to KTB&S). The balance (75%) shall remain in the Estate to be distributed as required by applicable law.

3.    Client and KTB&S contemplate that following the conclusion of the representation contemplated herein, KTB&S will file a final application requesting approval of its contingent fees and accounting for all of its expense reimbursements; *provided, however*, that the Bankruptcy Court's review of such application will be limited to the narrow standard set forth in the last sentence of section 328(a) of the Bankruptcy Code.

4.    Client agrees that KTB&S shall have a valid and enforceable attorney's charging lien on all proceeds derived from or in connection with the FDIC Tax Litigation, until such time as KTB&S has received in full all fees due under this agreement. This lien survives KTB&S's discharge or withdrawal from the representation, and constitutes a security interest knowingly and voluntarily granted by Client to secure payment for KTB&S's services and disbursements as Client's counsel. Client acknowledges and agrees that: (i) by this letter, Client has been advised in writing that Client may seek the advice of an independent lawyer of Client's choice; (ii) Client has a reasonable

Helen R. Frazer, Trustee
August 12, 2014
Page 4

opportunity to seek such advice prior to counter-signing and returning this letter; and (iii) by counter-signing and returning this letter, Client has consented in writing to the terms of this engagement, including the attorney's charging lien described in this paragraph. The attorney's charging lien granted in respect of the services provided to Client shall be governed by California law, including, without limitation, the principles set forth in *Fletcher v. Davis*, 90 P.3d 1216 (Cal. 2004).

5.     Pursuant to section 6147(4) of the California Business and Professions Code, please be advised that the compensation arrangements set forth herein, including the contingency fee, are not set by law but have been negotiated between Client and KTB&S.

Disclosures and Waivers.

KTB&S is a specialty law firm with few continuing institutional clients. Because of the specialized nature of its practice, from time to time KTB&S may concurrently represent one client in a particular case and the debtor, creditor, competitor or adversary of that client in an unrelated matter. Thus, by way of illustration only, while representing Client, KTB&S may in an unrelated matter represent a creditor of Client, or a creditor of the Estate or another bankruptcy estate in which the Client serves as a trustee, where that creditor is a debtor in a bankruptcy case or in connection with out-of-court negotiations with such entity's creditors concerning that entity's ability to pay its debts generally.

In particular, KTB&S calls your attention to the following:

(a)     Members of KTB&S have professional, business, social, and family relationships with firms and professionals that may be involved in the Bankruptcy Case or the FDIC Tax Litigation. Firms and professionals involved in these cases or the matters for which KTB&S is to be engaged may have referred (and may in the future refer) work to KTB&S (and vice versa), may have been retained or represented by KTB&S, or may have been jointly retained with KTB&S in other matters. KTB&S has strict policies against disclosing confidential information to anyone outside of KTB&S.

(b)     KTB&S represents and has represented, in unrelated matters, groups of former partners and shareholders, but not the partners and shareholders individually, in connection with their prior affiliation with law firms that have ceased operation, filed for bankruptcy, and/or liquidated. Certain of the members of those groups may now represent parties in these cases or may work for law firms that are involved in in the Bankruptcy Case or the FDIC Tax Litigation.

Helen R. Frazer, Trustee
August 12, 2014
Page 5

(c)    Several partners with KTB&S are or have been involved in Minimum Continuing Legal Education and other educational activities with the United States Trustee for the Central District of California (Region 16) and members of his office, and certain bankruptcy judges in the Central District of California.    Members of KTB&S have served, and currently serve, on the Ninth Circuit Judicial Conference and have served as members of the Ninth Circuit Judicial Merit Screening Panels.

(d)    Over the years, KTB&S has represented and currently represents in unrelated cases and matters debtor entities, representatives of bankruptcy estates (e.g., chapter 7 trustees), or other analogous entities such as liquidating or litigation trusts in which parties included among the parties in interest in the Bankruptcy Case and/or their affiliates have economic interests.

(e)    Since the formation of KTB&S approximately 15 years ago, and over the course of the lengthy careers of the lawyers comprising KTB&S, KTB&S and its attorneys have represented, now represent, and likely will represent in the future parties adverse to many of the creditors, professionals, equity holders, and other parties in interest in the Bankruptcy Case or the FDIC Tax Litigation.    Without limiting the generality of the foregoing, KTB&S currently represents chapter 7 trustees or other parties in other bankruptcy cases that are actively litigating with the FDIC regarding issues that are substantially similar to the issues that are likely to be raised in the FDIC Tax Litigation.

(f)    Maria Sountas-Argiropoulos, prior to joining KTB&S as a partner, represented the following parties and/or their affiliates in unrelated matters: (i) Wilmington Trust and (ii) US Bank National Association. KTB&S does not currently represent any of the parties in this paragraph and under no circumstances will KTB&S represent these parties in connection with the Bankruptcy Case or the FDIC Tax Litigation.    KTB&S is free to be adverse to the parties identified in this paragraph.

(g)    From time to time, KTB&S partners, associates, and employees owe income taxes to the California Franchise Tax Board.

(h)    From time to time, KTB&S partners, associates, and employees (i) have personal banking relationships with certain of the parties in interest in the Bankruptcy Case (including, without limitation, the maintenance of deposit accounts at depository institutions which are insured by the Federal Deposit Insurance Corporation); (ii) personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and/or other types of investment funds that may be administered by

Helen R. Frazer, Trustee
August 12, 2014
Page 6

certain of the parties in interest in the Bankruptcy Case or acquire a debt or equity security of certain of the parties in interest in the Bankruptcy Case; and/or (iii) personally (or through family trusts or family partnerships) invest in the publicly traded stock of certain of the parties in interest in the Bankruptcy Case, specifically including AT&T and U.S. Bank National Association.

(i)    From time to time, KTB&S and KTB&S partners, associates, and employees enter into ordinary customer relationships (e.g., a cable or cell phone service contract) with, or purchase goods or services from, certain of the parties in interest in the Bankruptcy Case, specifically including AT&T.

(j)    During the period of 2000-2001, the Honorable Deborah J. Saltzman practiced law as an associate attorney at KTB&S. During the period of September 2005 through and including September 2010, KTB&S partner Whitman L. Holt practiced law as an associate attorney at Stutman, Treister & Glatt P.C. ("ST&G"). During the course of Mr. Holt's employment at ST&G, the Honorable Scott H. Yun practiced law as a shareholder attorney at ST&G.

Client acknowledges the foregoing disclosures, does not believe that KTB&S's representation of Client is inappropriate or otherwise objectionable in light of the relationships described above, and consents to KTB&S's representation of Client under these circumstances.

Client does not consider the concurrent representation by KTB&S, in unrelated matters, of any adversary to Client or to the Estate to be inappropriate or otherwise objectionable and, therefore, waives any and all objections (and/or other rights to oppose or otherwise contest) any such concurrent representations (present and/or future) by KTB&S now or any time in the future including, without limitation, the representation by KTB&S of clients adverse to Client on or in connection with any matters and/or issues other than the engagement hereunder. Client understands that KTB&S is relying on this waiver and would not undertake this representation but for this waiver. Please be assured, however, that KTB&S strictly preserves all client confidences and zealously pursues the interests of each of its clients, including in those circumstances in which KTB&S represents the adversary of an existing client in an unrelated matter.

Client's consent to KTB&S's representation of parties directly adverse to Client in unrelated matters would not ordinarily require screening procedures unless a risk existed that relevant confidential information of Client might be disclosed to those working on behalf of Client's adversary or otherwise used against Client. If that risk exists, however, KTB&S will employ its customary screening procedures to protect Client's confidential information. Those procedures prohibit lawyers with access to

Helen R. Frazer, Trustee
August 12, 2014
Page 7

relevant confidential information of Client from participating in the representation of Client's adversary in the unrelated matter, and preclude those KTB&S professionals representing Client's adversary in the unrelated matter from communicating with lawyers with access to that information regarding either matter, or accessing documents, in our office or on our computer system, related to our representation of Client. Client acknowledges and agrees that KTB&S will not be required to implement screening procedures unless the risk described above exists, and that if such risk does exist the screening procedures described above are sufficient and appropriate.

Some attorneys at KTB&S have relatives or significant others who are attorneys at other law firms. Please advise in writing if you wish to review a list of such firms. We have strict policies against disclosing confidential information to anyone outside of the firm, including spouses, parents, children, siblings and fiancés. Client does not consider our representation of Client to be inappropriate in light of any such relationships.

KTB&S maintains errors and omissions insurance coverage applicable to the services to be rendered hereunder that complies with the requirements imposed by applicable California law.

Client is encouraged to obtain such outside legal advice as Client believes appropriate concerning the foregoing "Disclosures and Waivers" paragraphs, as well as any other provision of this agreement, including a further analysis of the advantages and disadvantages thereof.

Opinion Letters and Tax Matters.

If requested to provide an opinion letter, KTB&S does so only as approved by a special committee, based upon the facts and circumstances presented. KTB&S may determine, in its sole discretion, whether to provide any opinion letter requested by Client. If KTB&S agrees to provide an opinion letter, KTB&S may require an additional fee for the drafting and issuance of such a letter. Nothing herein is intended, nor should it be construed, as an obligation by KTB&S to issue any opinion letter.

KTB&S does not give tax advice. If, notwithstanding the preceding, any advice KTB&S furnishes to Client is deemed to constitute tax advice within the meaning of U.S. Treasury Regulations, then, as required by U.S. Treasury Regulations governing tax practice, Client is hereby advised that any tax advice will not be written or intended to be used (and cannot be used) by any taxpayer for the purpose of (i) avoiding any penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction(s) or tax-related matter(s).

Discharge and Withdrawal.

Client may discharge KTB&S at any time. Subject to the requirements of the Bankruptcy Court, KTB&S may withdraw at any time with Client's consent or for good

Helen R. Frazer, Trustee
August 12, 2014
Page 8

cause without Client's consent.  Good cause includes Client's breach of this agreement,
Client's refusal or failure to cooperate with KTB&S, Client's failure to have available
competent outside counsel to provide advice in all matters outside the scope of
KTB&S's limited engagement, or any fact or circumstance that would render KTB&S's
continuing representation unlawful or unethical.

### Client Files.

After the termination of KTB&S's engagement, KTB&S will retain Client's hard-
copy and electronic files in KTB&S's possession for a period of three years following
such termination.  If Client does not request in writing delivery of Client's files before the
end of that three-year period, KTB&S will have no further obligation to retain such files
upon the expiration of such period, and may, in KTB&S's sole discretion, destroy them
without further notice or obligation to Client.

### No Other Agreement.

This agreement constitutes the entire understanding between Client and KTB&S
regarding this engagement.  By executing this agreement, Client acknowledges that
Client has read carefully and understands all of its terms.  The agreement cannot be
modified except by further written agreement signed by each party.  KTB&S and Client
agree that executed signature pages to this agreement may be exchanged via fax or by
way of e-mailed documents.

[remainder of page intentionally left blank]

Helen R. Frazer, Trustee
August 12, 2014
Page 9

Conclusion.

     If you have any questions about the foregoing, please call me. Moreover, as noted above, you should feel free to obtain independent legal advice regarding this agreement. If you are in agreement with the foregoing, and it accurately represents your understanding of Client's agreement with this law firm, please execute and return a copy of this letter. If not, kindly contact me. We look forward to serving Client.

     Very truly yours,

     KLEE, TUCHIN, BOGDANOFF & STERN LLP

     By: Daniel J. Bussel

THE FOREGOING LETTER AGREEMENT IS APPROVED:

Helen R. Frazer, solely in her capacity as Chapter 7 Trustee

By:    Helen R. Frazer