# EXHIBIT 3

## BOIES, SCHILLER & FLEXNER LLP RETENTION AGREEMENT

### (ATTACHED)

**BOIES,  SCHILLER & FLEXNER LLP**

100 SOUTHEAST 2ND STREET • SUITE 2800 • MIAMI, FL 33131-2144 • PH. 305.539.8400 • FAX 305.539.1307

August 12, 2014

VIA E-MAIL
HFrazer@aalrr.com
- and - FIRST CLASS MAIL

*PERSONAL and CONFIDENTIAL*

Helen R. Frazer
Atkinson, Andelson, Loya, Ruud & Romo
12800 Center Court Drive, Suite 300
Cerritos, California  90703

   *RE:    ENGAGEMENT LETTER*

Dear Helen:

   This will confirm that Helen R. Frazer, as Chapter 7 Trustee (the "Client") for the bankruptcy estate of Temecula Valley Bancorp, Inc. (the "Estate") has agreed to retain Boies, Schiller & Flexner LLP (the "Firm") to represent the Client on a contingency fee basis in connection with litigation between the Client and the Federal Deposit Insurance Corporation ("FDIC") over the ownership of approximately $34 million tax refunds at issue (the "FDIC Tax Litigation") in the matter of *In re Temecula Valley Bancorp Inc.*, Case No. 6:09-bk-36828 (Bankr. C.D. Cal.) (the "Bankruptcy Case"). This engagement letter amends, supersedes and replaces in all respects the engagement letter between the Firm and the Client dated January 14, 2010. This engagement letter is effective as of July 1, 2014.

   I.      **Scope of Engagement**

   This is a limited engagement. BSF will only perform the following services, as and when requested by the Trustee (the "Engagement"):

   1.    Co-counseling with Klee, Tuchin, Bogdanoff & Stern LLP ("KTB&S") to prosecute the FDIC Tax Litigation before this Court.

BOIES,   SCHILLER   &   FLEXNER   LLP

Helen R. Frazer, as Chapter 7 Trustee
of Temecula Valley Bancorp, Inc.
August 12, 2014
Page | 2

> 2.    Co-counseling with KTB&S to represent the Estate in any appeals or other litigation before the District Court, the Ninth Circuit Court of Appeals, or the Supreme Court of the United States in connection with the FDIC Tax Litigation.
>
> 3.    Co-Counseling with KTB&S to represent the Estate in litigation in this Court or in appeals before the District Court, the Ninth Circuit Court of Appeals, or the Supreme Court of the United States in connection with the stay, postponement or timing of litigation of any non-tax refund related claims (the "Collateral Matters").
>
> 4.    Using its best efforts to assist the Trustee in identifying and negotiating litigation financing arrangements with respect to any future litigation that is neither FDIC Tax Litigation nor Collateral Matters, including, without limitation, litigation against the FDIC with respect to claims asserted by the FDIC that are unrelated to the tax refunds.

BSF's employment as the Trustee's litigation co-counsel does not include the provision of any services outside the context of items 1-4 enumerated above. In particular, and for the avoidance of doubt, BSF's engagement shall not involve the retention of BSF as general bankruptcy counsel for the Trustee or the provision of any services regarding the Bankruptcy Case other than with respect to items 1-4 above. Other services, including, without limitation, the litigation of any claims asserted by the FDIC that do not relate to the disputed tax refunds, other than the Collateral Matters, are outside the scope of BSF's employment. Since BSF will no longer be engaged as the Client's general bankruptcy counsel, to the extent that issues requiring such services become necessary, the Client agrees that she will handle any future general bankruptcy case matters and/or will retain separate bankruptcy counsel to do so, as such matters arise.

## II.    Fee Arrangement

The Client agrees that, subject to approval of the Bankruptcy Court, the Firm and KTB&S will be retained as special litigation counsel pursuant to Bankruptcy Code section 328(a) on a contingency fee basis with the following terms and conditions:

A.    <u>Expenses in connection with investigation, litigation, settlement, and the like related to the Engagement and other expenses in connection with the respective employments</u>: The Estate will pay all actual, out-of-pocket expenses relating thereto, whether directly or as billed by BSF and KTB&S, through the conclusion of the case.

B.    <u>Distributions of Recoveries</u>: The aggregate amounts of (i) any recovery realized by the Estate in the form of cash, as and when payable, or property (including deferred payments) as and when reduced to cash (including all amounts distributed to the Trustee from

BOIES,  SCHILLER  &  FLEXNER  LLP

Helen R. Frazer, as Chapter 7 Trustee
of Temecula Valley Bancorp, Inc.
August 12, 2014
Page | 3

the Reserve Account), whether from litigation or settlement involving the FDIC Tax Litigation, and (ii) any additional value made available for the benefit of the Estate through any settlement of the FDIC Tax Litigation with the FDIC (collectively, the "Recoveries") shall be distributed:

1.   The first dollars from the Recoveries shall reimburse the Estate for all expenses paid by the Estate pursuant to paragraph A., *i.e.*, all expenses incurred by BSF and KTB&S on or after July 1, 2014;

2.   If any funds remain in the Recoveries after payment of all expenses per the preceding paragraph B.1. (such amounts, the "Net Recoveries"), then:

   a.   If the FDIC Tax Litigation settles after the filing of the APPLICATION OF HELEN R. FRAZER, CHAPTER 7 TRUSTEE, FOR ORDER (1) AUTHORIZING EMPLOYMENT OF KLEE, TUCHIN, BOGDANOFF & STERN LLP AS SPECIAL LITIGATION CO-COUNSEL, (2) AMENDING THE ORDER AUTHORIZING EMPLOYMENT OF BOIES, SCHILLER & FLEXNER LLP, AND (3) APPROVING CONTINGENCY FEE COMPENSATION ARRANGEMENTS FOR BOTH FIRMS PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a), 327(e), AND 328(a) (the "Application") but before Court approval of this Application, then 5% of the Net Recoveries will be paid as a contingency fee to BSF and KTB&S (with 3% payable to BSF and 2% payable to KTB&S). The balance (95%) shall remain in the Estate to be distributed as required by applicable law.

   b.   If the FDIC Tax Litigation settles within 9 months of this Court's approval of the Application, then 20% of the Net Recoveries will be paid as a contingency fee to BSF and KTB&S (with 12% payable to BSF and 8% payable to KTB&S). The balance (80%) shall remain in the Estate to be distributed as required by applicable law.

   c.   If the FDIC Tax Litigation settles or is finally adjudicated after the 9-month period described in paragraph B.2.b., then 25% of the Net Recoveries will be paid as a contingency fee to BSF and KTB&S (with 15% payable to BSF and 10% payable to KTB&S). The balance (75%) shall remain in the Estate to be distributed as required by applicable law.

The Client also agrees to pay the Firm all expenses reasonably incurred in connection with the Engagement and as further described in the attached Billing Policy Statement (dated February 14, 2012). The Client agrees to make arrangements for the direct payment of expenses to any outside vendors or others whose expenses are reasonably expected to exceed $5,000. The Firm will send bills on a monthly basis in accordance with the attached Billing Policy Statement,

BOIES, SCHILLER & FLEXNER LLP

Helen R. Frazer, as Chapter 7 Trustee
of Temecula Valley Bancorp, Inc.
August 12, 2014
Page | 4

which are payable upon receipt for any expenses reasonably incurred in connection with the
Engagement. All **wire transfer** payments related to services rendered and costs incurred should
be sent to the Firm's account at Wells Fargo, Account Number ████████████Routing
Number ████████ All payments to the Firm being made by **ACH** should be sent to the Firms'
account at Wells Fargo Bank, N.A., Account Number████████████Routing Number
████████ Please note that there is a different routing number for payments made by wire and
payments made by ACH. Any payments to the Firm being made by check and all billing
correspondence should be sent to the Firms' Chief Financial Officer, Amy Habie, at our Boca
Raton office (2200 Corporate Boulevard, NW, Suite 400, Boca Raton, Florida 33431).

We will not render any tax or other opinions with respect to this transaction unless
specifically engaged by you pursuant to a specific written engagement letter providing for a
specific negotiated fee.

In the unlikely event that a dispute arises between the parties relating to any matter other
than our fees in connection with the Engagement, the parties agree that such dispute shall be
finally settled by binding, confidential arbitration under the JAMS Comprehensive Arbitration
Rules and Procedures in force at the time such arbitration is commenced.

You agree that all of our fees for services to be rendered are non-refundable and earned
when received.

We have explained and you have agreed that as a result of the types of clients the Firm
advises and the types of engagements in which we are involved, we may be requested to act for
other persons on matters which are not substantially related to the Engagement, where the
interests of the other persons, and the Firm's representation of them, may be adverse to the
Client. We would, of course, not be relieved of any obligation we may have to retain in
confidence any confidential information obtained from the Client and to refrain from using or
disclosing such information in connection with any other representation we may undertake.

You agree that our representation in this matter will not be asserted by you as an actual or
potential conflict should we in the future undertake to represent any potential adversaries in
matters unrelated to this Engagement. You also agree to waive any and all potential and actual
conflicts to the extent permitted by applicable law, and agree not to seek our disqualification in
any matter based upon such representation.

BOIES, SCHILLER & FLEXNER LLP

Helen R. Frazer, as Chapter 7 Trustee
of Temecula Valley Bancorp, Inc.
August 12, 2014
Page | 5

If the terms of this Engagement are agreeable to you, please so indicate by signing below and returning this letter to me at Boies, Schiller & Flexner LLP, 100 Southeast Second Street, Suite 2800, Miami, Florida 33131.

NOTICE:  This agreement contains provisions requiring arbitration of fee disputes. Before you sign this agreement you should consider consulting with another attorney about the advisability of making an agreement with mandatory arbitration requirements. Arbitration proceedings are ways to resolve disputes without use of the court system. By entering into agreements that require arbitration as the way to resolve fee disputes, you give up (waive) your right to go to court to resolve those disputes by a judge or jury. These are important rights that should not be given up without careful consideration.

We are pleased to represent you and look forward to working together on this matter.

Sincerely,
Boies, Schiller & Flexner LLP

By:_____
    Michael Kosnitzky, Partner

The foregoing is acknowledged, accepted and agreed to
on this ___13th___ day of ___August___, 2014.

By:_____
    Helen R. Frazer, as Chapter 7 Trustee
    of Temecula Valley Bancorp, Inc.